FILED
2020 Apr-03  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**Eastern Division**

| | |
|---|---|
| **ANGELA COOK and**<br>**WILLIAM COOK,**<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**DEIGHAN LAW LLC,**<br>**LAW SOLUTIONS CHICAGO LLC, and**<br>**UPRIGHT LAW, LLC,**<br><br>  **Defendants.** | **Case No.:**<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Angela Cook and William Cook ("Cooks" or "Plaintiffs") file this Class Action Complaint against Defendants Deighan Law LLC, Law Solutions Chicago LLC, and UpRight Law LLC (collectively, "UpRight" or "Defendants")[1] on behalf of themselves and all others similarly situated, as described below.

## NATURE OF THE CASE

1.      UpRight, under the guise of a national bankruptcy law firm, along with indicted co-conspirator Brian Fenner, developed and executed a scheme to steal assets from UpRight's clients and enrich themselves by abusing the federal bankruptcy courts.  This class action case is filed on behalf of the hundreds of financially distressed individuals across the country that fell victim to

---

[1] "UpRight" includes the various former and subsequent legal and trade names it has assumed. Plaintiffs have attempted to name each of the various names used by this "law firm." In previous filings in the Bankruptcy Court for the Northern District of Alabama, UpRight has stated, "In Plaintiff's Class Action Complaint [Doc. 1] names Law Solutions Chicago, LLC and UpRight Law, LLC as defendants. For clarification, "Upright Law, LLC" (with the comma before "LLC") is the assumed name under which Law Solutions Chicago LLC does business in the State of Oregon. In the State of Alabama, Law Solutions Chicago LLC does business as UpRight Law (without the "LLC") Neither UpRight Law, nor UpRight Law, LLC, is a separate legal entity unto itself. Also, the legal name of Defendant is "Law Solutions Chicago LLC" (without the comma)." *Mikulin v. Upright, et al.*, AP No. 19-80024-JJR (Bankr. N.D. Ala.), Def.'s Mot. Dismiss [Dkt. 12] at n1.

UpRight's scheme.

2.     This action for damages filed by Plaintiffs seeks relief for themselves and a putative class under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. and Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. § 526(a)(4) of the Bankruptcy Code.

3.     This action is also filed for injunctive relief to prohibit future violations of the RICO statute and Bankruptcy Code by UpRight.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 based upon the federal claims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO").

5.     This Court also has "original and exclusive jurisdiction of all cases under title 11 of the Bankruptcy Code. 11 28 U.S.C. §§ 1334(a). Referral to the bankruptcy court is not appropriate in this matter since "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Specifically, this case requires consideration and interpretation of the federal RICO statute, which is a law regulating organizations and activities affecting interstate commerce. *See* 18 U.S.C. § 1961, *et seq*.

6.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Defendants are citizens of a state other than the state of which Plaintiffs are citizens. More than one hundred members are included in the putative class.

7.     This Court has personal jurisdiction over UpRight because it conducts business in the State, it purposefully directs or directed its actions toward Alabama, and it has the requisite minimum contacts with the State necessary to constitutionally permit the Court to exercise

jurisdiction.

8.      Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391. UpRight transacts affairs in this district. Furthermore, Plaintiffs reside in Etowah County, Alabama and the violations described below occurred in the state of Alabama and within this district.

## PARTIES

9.      Plaintiff Angela Cook is a potential debtor under Chapter 7 of Title 11 of the United States Code and an assisted person as defined by 11 U.S.C. § 101(3). She is also a person as defined by 18 U.S.C. § 1961(3).

10.      Plaintiff William Cook is a potential debtor under Chapter 7 of Title 11 of the United States Code and an assisted person as defined by 11 U.S.C. § 101(3). He is also a person as defined by 18 U.S.C. § 1961(3).

11.      Defendant Deighan Law LLC, f/k/a Law Solutions Chicago LLC, d/b/a UpRight Law LLC, and d/b/a UpRight Law, is a law firm that does business in this district and is headquartered at 79 West Monroe, 5th Floor, Chicago, Illinois 60603. Its registered agent with the Alabama Secretary of State is Incorp Services, Inc., located at 2740 Zelda Road Suite 5B, Montgomery, Alabama 36106. It is also a person as defined by 18 U.S.C. § 1961(3).

12.      Defendant Law Solutions Chicago, LLC, n/k/a Deighan Law LLC, d/b/a UpRight Law LLC, and d/b/a UpRight Law, is a law firm that does business in this district and is headquartered at 79 West Monroe, 5th Floor, Chicago, Illinois 60603. It is also a person as defined by 18 U.S.C. § 1961(3).

13.      Defendant UpRight Law, LLC is a law firm that does business in this district and is headquartered at 79 West Monroe, 5th Floor, Chicago, Illinois 60603. It is also a person as defined by 18 U.S.C. § 1961(3).

14.     UpRight is a debt relief agency as defined by 11 U.S.C. § 101(12A).

## FACTUAL ALLEGATIONS

### A. The Fast Fee Scheme

15.     UpRight designed and executed a now well-documented criminal scam "to put money in their own pockets, while exposing their clients to serious risks…."[2] Since bankruptcy clients are already suffering financial hardships, they struggle to pay upfront fees. UpRight participated in a scheme to exploit its clients' vulnerable position by advising them to incur additional debt in order to pay UpRight's fees.

16.     UpRight's participation in the scheme allowed the attorney's fees it charged for filing bankruptcy cases to be paid by a third-party, Brian Fenner, who owned and operated two companies – Fenner & Associates and Sperro LLC (Fenner and his companies collectively referred to as "Fenner"). In exchange for Fenner's payment of the attorney's fee, UpRight would advise its clients to incur additional debt by allowing Fenner to arrange the surrender of their vehicle to Sperro LLC (hereinafter referred to as the "Fast Fee Scheme"). Using the victim's automobile, Fenner would exploit Nevada, Mississippi, or Indiana's mechanic's lien laws to charge exorbitant towing and storage fees and conduct sham auctions.

17.     Based on Fenner's participation in the Fast Fee Scheme with UpRight, a federal grand jury returned a seventeen-count Superseding Indictment against Fenner for Money Laundering, Mail Fraud, Wire Fraud, and Conspiracy to Commit Mail Fraud and Wire Fraud.[34]

---

[2] *In re White*, No. 16-72114-JHH, 2018 WL 1902491, at *1-3 (Bankr. N.D. Ala. Apr. 19, 2018) (citing findings by the United States Bankruptcy Court for the Western District of Virginia in *Robbins v. Delafield* (*In re Williams*), *Robbins v. Morgan* (*In re Scott*), 2018 WL 832894 (Bankr. W.D. Va.; Feb. 12, 2018).

[3] *United States of America v. Brian Fenner, et al.*, Case No. 1:18-cr-00333-RLY-DML, (S.D. Ind.), Penalty Sheet [Dkt. 69].

[4] Fenner was initially indicted on one-count of conspiracy to commit mail, wire, and bank fraud on October 17, 2018. *See* https://www.justice.gov/usao-sdin/pr/towing-company-owners-indicted-federal-fraud-conspiracy (last accessed on February 21, 2020).

18.     The details of the Fast Fee Scheme have been recounted by federal courts throughout the country, including the United States Bankruptcy Court for the Northern District of Alabama:

> When a prospective bankruptcy client contacted UpRight, the client was asked whether he owned an encumbered vehicle, and if so, whether he intended to surrender it to the secured creditor who held the lien against the vehicle. If the client responded that he intended to surrender the vehicle, he was told to contact Sperro/Fenner, who would not only pick up the vehicle, but also pay the attorney's and filing fees to UpRight for the client's bankruptcy case. (In the Cook and Mikulin Cases, the Sperro/Fenner scheme saved the debtors $1,485 and $1,935, respectively.)

> Sperro/Fenner would take possession of the vehicle at the client's residence and tow it to another state, often Indiana (based on the belief that Indiana state law allowed towing and storage charges to prime a secured creditor, thus allowing the vehicles to be held hostage). Sperro/Fenner then notified the secured creditor by mail that its collateral was in storage at a Sperro/Fenner facility, and gave the secured creditor a few days to pay Sperro/Fenner's sizable fees for loading, towing, and storing expenses, all unnecessary and fabricated. If the creditor did not concede to the blackmail demand and quickly rescue its collateral, the vehicle was sold at auction, purportedly in conformity with state law and supposedly free of the creditor's lien. According to the findings in *In re Williams,* this scam was utilized nationwide in hundreds of cases, which would include the Cook and Mikulin Cases, and resulted in UpRight's receipt of over $333,000 in attorney's fees.

*In re White,* No. 16-72114-JHH, 2018 WL 1902491, at *2 (Bankr. N.D. Ala. Apr. 19, 2018) (citing findings by the United States Bankruptcy Court for the Western District of Virginia in *Robbins v. Delafield* (*In re Williams*), *Robbins v. Morgan* (*In re Scott*), 2018 WL 832894 (Bankr. W.D. Va.; Feb. 12, 2018)).

19.     The United States Department of Justice also detailed the Fast Fee Scheme:

> According to the indictment, Fenner targeted financially distressed individuals who were upside down on their auto loans. He allegedly promised to pay their bankruptcy attorneys' fees if they turned their vehicles over to him. The indictment alleges that between 2013 and 2016, numerous individuals from all around the United States signed on with Fenner and had their vehicles towed to and stored on Fenner's lots in Indianapolis, in exchange for what they thought would be a "free" bankruptcy.

What neither the individuals nor the banks knew, however, was that Fenner had allegedly agreed with his silent partner, Birkley, to exploit Indiana's mechanic's lien law to strip the vehicle titles of the banks' liens, leaving the individuals with the debt but no collateral to return to the bank.

According to the indictment, Fenner purported to charge the individuals exorbitant "towing" and "storage" fees for bringing their cars to his Indianapolis lots. The indictment alleges, however, that Fenner never intended to collect those fees. Rather, he used the fees to get a "mechanic's lien" on the vehicle.

…

"The charges announced today address a significant fraud scheme that caused harm to vulnerable debtors and strikes directly at the integrity of the bankruptcy system," stated Nancy J. Gargula, United States Trustee for Indiana and Southern and Central Illinois (Region 10). "This indictment reflects the cooperative efforts among several federal law enforcement agencies that work together to combat fraud and abuse in the bankruptcy system."

https://www.justice.gov/usao-sdin/pr/towing-company-owners-indicted-federal-fraud-conspiracy

(last accessed on February 21, 2020).

20.     UpRight and Fenner worked together and were active participants in the Fast Fee Scheme. Numerous correspondence and conversations between UpRight's management show that both parties had full knowledge of how the Fast Fee Scheme would work. These conversations and correspondence are described extensively in the case *In re Williams*, No. 15-71767, 2018 WL 832894, at *8-11 (Bankr. W.D. Va. Feb. 12, 2018), *aff'd in part, vacated in part, remanded sub nom. Allen v. Fitzgerald, Tr. for Region Four*, No. 5:18-CV-00057, 2019 WL 6742996 (W.D. Va. Dec. 11, 2019).

21.     Analyzing *In re Williams* on appeal, the United States District Court for Western District of Virginia found the bankruptcy court's findings were amply supported by the record.

2. The Sperro Program
The bankruptcy court found that the Sperro Program was a "scam from the start" and held Chern [UpRight's Managing Partner] responsible for its creation and implementation. Bankr. Op. 503, 506. The Sperro Program involved LSC [Law

Solutions Chicago, LLC] clients surrendering their financed cars to companies operated by nonparty Brian Fenner. The Fenner entities would tow cars out of certain states, including Virginia, "to Fenner-related storage lots in Nevada, Mississippi, or Indiana for the purpose of trying to prime secured lenders, or hold their collateral hostage, with excessive hookup, towing and storage fees that were completely unnecessary." *Id.* at 468–73. In return the Fenner entities would pay LSC's "clients' attorney's fees and filing fees in order to get the referral from [LSC] to do it." *Id.* at 472.

From the moment Chern emailed the LSC partners regarding the Sperro program, he was alerted to the questionable nature of the business arrangement. *Id.* at 472. To further evidence this misconduct, potential debtors, including the Williamses, were offered the Sperro program by LSC's client consultants before the debtor consulted with an attorney. *Id.* at 472, 504.7

The bankruptcy court laid out a detailed factual finding regarding the creation of the Sperro program. See Bankr. Op. 468–78. **In essence, Chern created the program to increase the speed and likelihood of receipt of attorney fees**. *Id.* at 503. **The bankruptcy court's finding that the Sperro program was created and implemented in bad faith is amply supported by the record and is not clearly wrong.** *Id.* at 507.

*Allen v. Fitzgerald, Tr. for Region Four*, No. 5:18-CV-00057, 2019 WL 6742996, at *5–6 (W.D. Va. Dec. 11, 2019) (emphasis added).

**B. Plaintiffs Fall Victim to the Fast Fee Scheme.**

22.     In early October 2015, Plaintiffs located the contact information for UpRight on the internet. On October 8, 2015, the Cooks digitally signed an Attorney Client Base Retainer Agreement for Chapter 7 Bankruptcy Related Services ("Retainer Agreement") with UpRight. That same day, Plaintiffs paid $10.00 to UPRIGHT LAW. UPRIGHT LAW characterized said payment as "Retainer."

23.     In October 2015, During the initial phone conversation with UpRight representatives, Plaintiffs informed UpRight that they intended to surrender the vehicle. UpRight recommended that they turn the vehicle over to Fenner's company, Sperro LLC. UpRight advised Plaintiffs that Sperro LLC would pay the attorney and filing fees to UpRight for the Cooks'

bankruptcy case if they turned their vehicle over to Sperro LLC.

24.    UpRight then contacted Sperro LLC on behalf of Plaintiffs to set up an appointment time to pick up the vehicle. Sperro LLC contacted Plaintiffs to confirm the pickup date for the vehicle.

25.    On October 9, 2015, Plaintiffs and Sperro LLC entered into a Transporting and Storage Authorization Agreement ("TSAA").  On October 13, 2015, a local towing company picked up the vehicle on behalf of Sperro LLC. The vehicle was transported from Alabama to Indiana where Sperro LLC charged excessive transportation and storage fees, leaving Plaintiffs with the debt but no collateral to return to the bank.

26.    Plaintiffs then received an email from UpRight that the attorney fees and filing fees were paid.

27.    UpRight concealed the facts related to its participation in the Fast Fee Scheme from the Plaintiffs.  UpRight did not disclose its participation in the Fast Fee Scheme to Plaintiffs, through documents or otherwise, by Upright.  Due to this fraudulent concealment, Plaintiffs were unaware that they were being victimized by UpRight. Further, Plaintiffs were unable to discover these critical facts through the exercise of reasonable diligence.

28.    UpRight and Fenner's Fast Fee Scheme caused Plaintiffs to incur more debt, and less collateral, in contemplation of filing their Chapter 7 case. This conduct constitutes a violation of 11 U.S.C. § 526 and the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c) and (d).

## CLASS ACTION ALLEGATION

29.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiffs bring this action on behalf of themselves and all others similarly situated.

30.     The Class is defined as any person who satisfies the following criteria:

a.      Any person who incurred additional debt in order to pay or have paid an attorney's fee to UpRight;

b.      Any person that surrendered their vehicle(s) and UpRight collected attorney's fees from Fenner, Fenner & Associates, Sperro LLC, or any other similar entity or person in exchange.

31.     The class period includes all active Chapter 7 cases and any prospective assisted person or assisted person who had signed a Retainer Agreement within the past six (6) years prior to filing of the original Complaint in this proceeding and ends when this Court issues an Order Approving Class Notice.

32.     Plaintiffs are unable to state the exact number of Class Members because that information is solely in the possession of UpRight. However, the exact number of Class Members including the names and addresses of all class members will be easily ascertained through a review of UpRight's business records. Upon information and belief, the putative Class exceeds 100 consumers in the State of Alabama alone. UpRight routinely files hundreds of Chapter 7 bankruptcy cases per year. Therefore, the putative Class is so numerous that joinder of all members would be impracticable.

33.     With respect to the actions of UpRight, questions of law and fact common to the Class exist and predominate over questions affecting individual members, including *inter alia,* the following:

a.      Whether UpRight's advice and arrangement to surrender the encumbered vehicle to Fenner causes an assisted person to incur more debt prior to filing Chapter 7 for the purpose of paying for attorney services, violating the provisions of 11

U.S.C. § 526(a)(4)?

b.    Whether UpRight's clients incurred more debt as a result of the Fast Fee Scheme?

c.    Whether the Fast Fee Scheme caused additional injuries to UpRight's clients?

d.    Whether the Fast Fee Scheme violated additional federal or state laws?

e.    What is the appropriate amount of damages and relief allowed?

f.    Whether the Fast Fee Enterprise is an enterprise engaged in and whose activities affect interstate commerce.

g.    Whether UpRight is associated with the Fast Fee Enterprise.

h.    Whether UpRight agreed to and did conduct and participate in the conduct of the Fast Fee Enterprise's affairs through a pattern of racketeering activity and for unlawful purposes.

i.    Whether UpRight conducted and participated in the conduct of the affairs of the Fast Fee Enterprise through a pattern of racketeering activity.]

j.    Pursuant to and in furtherance of their fraudulent Fast Fee scheme, did UpRight commit multiple related acts of mail fraud, wire fraud, or money laundering?

k.    Whether UpRight's conduct constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5)?

l.    Whether UpRight directly and indirectly conducted and participated in the conduct of the Fast Fee Enterprise's affairs through the pattern of racketeering and activity?

m.    Whether UpRight's conduct violated 18 U.S.C. § 1962(c)?

n.    Whether UpRight and Fenner agreed and conspired to violate 18 U.S.C. § 1962(c)?

10

      o.      Whether UpRight's conduct violated 18 U.S.C. § 1962(d)ri

34.     With respect to the actions of UpRight, the claims asserted by Plaintiffs in in this action are typical of the claims of the members of the Class because, upon information and belief, UpRight uses standardized procedures when attempting to collect attorney's fees through Fenner, Sperro LLC and any other similar entity or person prior to filing a Chapter 7 bankruptcy petition. The claims of Plaintiffs and of the Class originate from the same conduct, practice, and procedure. Plaintiffs possess the same interests and have suffered the same injuries as each Class Member. There are no individual facts which distinguish Plaintiffs from other Class Members that would prohibit them from prosecuting this lawsuit on behalf of the Class.

35.     With respect to the action, Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class because they has no interest antagonistic to  the Class she seeks to represent, and because the adjudication of their claims will necessarily decide the identical issues for other Class Members. Whether UpRight's advice to Plaintiffs to surrender their encumbered vehicle to Sperro LLC for payment of Chapter 7 attorney's fees by Fenner or similar entities or persons violates the Bankruptcy Code is an issue that will be decided for all other consumers with similar or identical claims. There is nothing peculiar about Plaintiffs situation that would make them inadequate as class representative. Plaintiffs have retained counsel competent and experienced in bankruptcy, consumer protection, and class action litigation.

36.     With respect to the actions of UpRight, a class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class Member will be relatively modest, compared to the burden and expense of copious individual litigation. It would be impracticable for each Class Member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be

cost prohibitive as actual damages for each individual violation would be approximately $1,550.00. It would be difficult, if not impossible, to obtain counsel to represent plaintiffs on an individual basis for each small claim. More importantly, the vast majority of Class Members are not aware that UpRight's advice to surrender their encumbered vehicle to Sperro LLC for payment of Chapter 7 attorney's fees violates the Bankruptcy Code, and a class action is the only viable means of adjudicating their individual rights. There will be no difficulty in the management of this litigation as a class action as the legal issues relate to a standardized pattern of conduct by UpRight, and class actions are commonly used in such circumstances.

37.     Plaintiffs maintain the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, further divided into subclasses, or modified in any other way.

## FIRST CAUSE OF ACTION

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 .S.C. § 1962(c)

38.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out fully herein. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

39.     Plaintiffs bring this Count against each Defendant (referred collectively as UpRight).

40.     Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c); *United States v. Turkette*, 452 U.S. 576, 580 (1981).

41.     At all relevant times, UpRight was engaged in conduct that meets all elements necessary to constitute a violation of RICO.

**A.  PERSON.**

42.     At all relevant times, UpRight was a "person" under 18 U.S.C. § 1961(3) because it is a legal entity (or entities) capable of holding, and do hold, "a legal or beneficial interest in property." Specifically, UpRight operates a nationwide bankruptcy law firm that purports to assist clients with various bankruptcy needs.

**B.  FAST FEE ENTERPRISE.**

43.     The definition of "enterprise" in § 1961(4) includes legitimate and illegitimate enterprises within its scope. Specifically, the section "describes two separate categories of associations that come within the purview of an 'enterprise' -- the first encompassing organizations such as corporations, partnerships, and other 'legal entities,' and the second covering 'any union or group of individuals associated in fact although not a legal entity.'" *Turkette*, 452 U.S. at 577.

44.     At all relevant times, UpRight was engaged in an illegal enterprise with Fenner. The illicit association-in-fact enterprise between UpRight and Fenner planned the Fast Fee Scheme, and the scheme was executed in perfect harmony by each member of the enterprise.

45.     As detailed above, UpRight and Fenner created the Fast Fee Enterprise, which enabled the attorney's fees charged by UpRight for bankruptcy cases to be paid by Fenner. UpRight and Fenner associated together for the common purpose of operating and executing the Fast Fee Scheme. As shown herein, UpRight and Fenner acted each independently to advance their own interest in conducting the scheme.

46.     Specifically, UpRight would advise its clients, including Plaintiffs, that they would get a "free fee" if they contacted Fenner and surrendered their vehicle to one of his companies.

This advice and arrangement caused UpRight's clients to incur more debt prior to filing Chapter 7 for the purpose of paying for attorney services, violating the provisions of 11 U.S.C. § 526(a)(4).

47.     Fenner, in turn, would exploit the mechanic's lien laws by transporting the victims across state lines and charge exorbitant storage fees and conduct sham auctions. As described herein and in the Superseding Indictment's Penalty Sheet, Fenner's exploitation of the various mechanics liens and sham auctions violated several criminal statutes, including wire fraud, mail fraud, money laundering, and conspiracy to commit these crimes.[5]

48.     The Fast Fee Enterprise members worked together for the common purpose of enriching themselves and leaving their victims with additional debt and no collateral return to the lien holder.[6]

49.     The Fast Fee Enterprise executed its scheme time and time again.[7] The scam was utilized nationwide in hundreds of cases, including Plaintiffs' case, and resulted in hundreds of thousands in attorney's fees for UpRight and in profit for Fenner.

50.     UpRight and Fenner operated the Fast Fee Enterprise to exploit Plaintiffs. As outlined above, in early October 2015, Plaintiffs located the contact information for UpRight on the internet. On October 8, 2015, Plaintiffs digitally signed the Retainer Agreement with UpRight. That same day, Plaintiffs paid $10.00 to UpRight Law, which characterized said payment as "Retainer." In October 2015, During the initial phone conversation with UpRight representatives, Plaintiffs informed UpRight that they intended to surrender the vehicle. UpRight recommended

---

[5] *United States of America v. Brian Fenner, et al.*, Case No. 1:18-cr-00333-RLY-DML, (S.D. Ind.), Penalty Sheet [Dkt. 69].

[6] The cooperative nature of the Fast Fee Enterprise is described in the Factual Allegations Section and in the cases *In re Williams*, No. 15-71767, 2018 WL 832894, at *8-11 (Bankr. W.D. Va. Feb. 12, 2018) and *Allen v. Fitzgerald, Tr. for Region Four*, No. 5:18-CV-00057, 2019 WL 6742996, at *5-6 (W.D. Va. Dec. 11, 2019).

[7] *In re White*, No. 16-72114-JHH, 2018 WL 1902491, at *1-3 (Bankr. N.D. Ala. Apr. 19, 2018) (citing findings by the United States Bankruptcy Court for the Western District of Virginia in *Robbins v. Delafield* (*In re Williams*), *Robbins v. Morgan* (*In re Scott*), 2018 WL 832894 (Bankr. W.D. Va.; Feb. 12, 2018).

that they turn the vehicle over to Fenner. UpRight advised Plaintiffs that Sperro LLC would pay the attorney and filing fees to UpRight for the Cooks' bankruptcy case if they turned their vehicle over to Sperro LLC.

51.     UpRight then contacted Sperro LLC on behalf of Plaintiffs to set up an appointment time to pick up the vehicle. Sperro LLC contacted Plaintiffs to confirm the pickup date for the vehicle.  On October 9, 2015, Plaintiffs and Sperro LLC entered into a Transporting and Storage Authorization Agreement ("TSAA").  On October 13, 2015, a local towing company picked up the vehicle on behalf of Sperro LLC. The vehicle was transported from Alabama to Indiana where Sperro LLC charged excessive transportation and storage fees, leaving Plaintiffs with the debt but no collateral to return to the bank. Afterwards, Plaintiffs received an email from UpRight that the attorney fees and filing fees were paid.

### C.  INTERSTATE COMMERCE.

52.     The Fast Fee Enterprises engaged in, and its activities affected, interstate and foreign commerce because the enterprise involved commercial activities across state lines, such as transporting vehicles from states across the country to Nevada, Mississippi, or Indiana and the corresponding payment and/or receipt of money from the execution of the Fast Fee Scheme. This specifically includes transporting Plaintiffs' vehicle from this jurisdiction to Indiana and the corresponding payment and receipt of money by both UpRight and Fenner.

### D.  PATTERN OF RACKETEERING ACTIVITY.

53.     UpRight and Fenner committed, conspired to commit, and/or aided and abetted in the commission of at least two predicate acts of racketeering activity, including 18 U.S.C. § 1961(B), including mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1956). UpRight also violated 11 U.S.C. § 526(a)(4) by advising

UpRight's clients to incur more debt in contemplation filing bankruptcy.

54.     The multiple acts of racketeering activity that UpRight and Fenner committed, or aided and abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by using mail, telephone, and the internet to transmit mailings and wires in interstate or foreign commerce.

55.     UpRight and Fenner used, directed the use of, and/or caused to be used hundreds of interstate mail and wire communications in service of their Fast Fee Scheme through uniform misrepresentations, concealments, and material omissions regarding the ability for Upright clients to get a "free attorney's fee" by surrendering their vehicle, transportation of vehicles across state lines, fraudulent storage fee, and bogus auctions.

56.     In devising and executing the illegal scheme, UpRight and Fenner devised and knowingly carried out a material scheme and/or artifice to defraud by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, UpRight and Fenner committed these racketeering acts, which number in the hundreds, intentionally and knowingly with the specific intent to advance the illegal scheme.

57.     UpRight and Fenner's predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

a.     Mail Fraud: UpRight and Fenner violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to advise UpRight clients they could get a "free attorney's fee" by

surrendering their vehicle, the transportation of vehicles across state lines for illicit purposes, the charging of fraudulent storage fee, and conducting bogus auctions by means of false pretenses, misrepresentations, promises and omissions.

b.    Wire Fraud: UpRight and Fenner violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to advise UpRight clients they could get a "free attorney's fee" by surrendering their vehicle, the transportation of vehicles across state lines for illicit purposes, the charging of fraudulent storage fee, and conducting bogus auctions by means of false pretenses, misrepresentations, promises and omissions.

c.    Money Laundering: UpRight and Fenner violated 18 U.S.C. § 1956 by concealing or disguising the nature, the location, the source, the ownership, or the control of the proceeds from the unlawful scheme to advise UpRight clients they could get a "free attorney's fee" by surrendering their vehicle, the transportation of vehicles across state lines for illicit purposes, the charging of fraudulent storage fee, and conducting bogus auctions by means of false pretenses, misrepresentations, promises and omissions.

58.    UpRight and Fenner's use of the mail and wires include, but are not limited to, clients, lien holders, insurance companies, courts, and third parties that were foreseeably contacted or communicated with by mail or by private carrier affecting interstate commerce or wire (including phone and internet) to conduct the illegal scheme, including but not limited to:

a.   Documents and communications with UpRight's clients, including UpRight's advice to participate in the Fast Fee Scheme;

b.   Documents and communications with or relating to the lien holders of UpRight's clients' automobiles;

c.   Documents and communications with or relating to insurance companies with an interest in UpRight's clients' automobiles documents and communications that facilitated or supported the transfer of title and surrender of UpRight's clients' automobiles;

d.   Documents and communications that supported and/or facilitated the storage of UpRight's clients' automobiles;

e.   Documents and communications that supported and/or facilitated the auction of UpRight's clients' automobiles;

f.   Documents and communications that supported and/or facilitated the certification by UpRight and its clients regarding the source of the attorney's fee;

g.   Documents and communications that supported and/or facilitated the auctions of UpRight's clients' vehicles;

h.   Documents for processing, receiving, and deposits of payment to UpRight by Fenner;

i.   Documents for processing, receiving, and deposits of payment to Fenner related to the proceeds of the auctions of UpRight's clients' vehicles

j.   Other documents and things, including electronic communications.

59.   UpRight and Fenner also utilized U.S. Mail, by interstate facsimile, phone, wire,

and by interstate electronic mail to exchange information regarding the ongoing fraudulent activities. UpRight and Fenner used these means to make misrepresentations about their unlawful scheme to advise UpRight clients they could get a "free attorney's fee" by surrendering their vehicle, the transportation of vehicles across state lines for illicit purposes, the charging of fraudulent storage fee, and conducting bogus auctions by means of false pretenses, misrepresentations, promises and omissions. Specifically, in October 2015, UpRight and Fenner communicated with Plaintiffs using these means, including internet, phone, and email, regarding the surrender of their vehicle in order to get a "free fee" for their bankruptcy filing.  UpRight and Fenner also communicated with Plaintiffs and their lien holder using these means to facility and profit from the surrender, transportation, storage, and sale of the vehicle.

60.     UpRight and Fenner also communicated by U.S. Mail, by interstate facsimile and by interstate electronic mail with each other and various other clients, lien holders, insurance companies, and other third-party entities in furtherance of the scheme.

61.     The mail and wire transmissions described herein were made in furtherance of the Fast Fee Scheme and common course of conduct to deceive UpRight's clients, lien holders, and courts.

62.     Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities are not publicly available or have been deliberately hidden, and cannot be alleged without access to UpRight's books and records. Plaintiffs have described the types of and, in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. They include hundreds of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

63.     UpRight and Fenner did not undertake the practices described herein in isolation,

but as part of a common scheme. These actions violate 18 U.S.C. § 1962(c). Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in this Complaint, may have contributed to and/or participated in the scheme with UpRight and Fenner in these offenses and have performed acts in furtherance of the illicit scheme.

64.     UpRight and Fenner aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341, 1343, and 1956 offenses.

65.     UpRight and Fenner, with knowledge and intent, agreed to the overall objective of their fraudulent scheme and participated in the common course of conduct to commit acts of necessary to execute the scheme.

66.     As described herein, UpRight and Fenner engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining fast fees from vulnerable clients by UpRight and proceeds of bogus storage charges and auctions. The predicate acts also had the same or similar results, participants, victims, and methods of commission.

67.     The predicate acts all had the purpose of generating significant revenue and profits for UpRight and Fenner, while Plaintiffs were left with additional debt and less collateral. UpRight and Fenner committed or caused to be committed the predicate acts through their participation in the Fast Fee Enterprise and in furtherance of its fraudulent scheme.

68.     The pattern of racketeering activity alleged herein and the Fast Fee Enterprise are separate and distinct from each other. Likewise, UpRight and Fenner are distinct from the enterprise.

69.     Each instance of racketeering activity alleged herein was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar

results affecting similar victims, including UpRight clients throughout the nation and in this district, including Plaintiffs.

70.     As described herein, the Fast Fee Enterprise was continuous in nature and it executed the scheme time and time again.[8] The scheme was utilized nationwide in hundreds of cases, including Plaintiffs' case, and resulted in hundreds of thousands in attorney's fees for UpRight and in profits for Fenner.

71.     The predicate acts were related and not isolated events. Instead, they were executed by the same parties – UpRight and Fenner – using the same method of commission against the same group of victims, i.e., UpRight's clients, for the same purpose – profits for Fenner and attorney's fees for UpRight.

**E.  DAMAGES.**

72.     UpRight's violations of law and its pattern of racketeering activity directly and proximately caused Plaintiffs' injury because Plaintiffs lost collateral and incurred additional debt, as described above in allegations expressly incorporated herein by reference.

73.     UpRight's racketeering activities proximately caused Plaintiffs' injuries and those of the putative class. But for UpRight's conduct, Plaintiffs would not have lost collateral and incurred additional debt.

74.     Additionally, UpRight's racketeering activities, which include its violation of 11 U.S.C. § 526(c)(l), voids its contract with Plaintiffs, and Plaintiffs are entitled to recover the full amount of the attorney's fees paid to UpRight.

75.     As described herein, Plaintiffs are "persons" who sustained injury to their property

---

[8] *In re White*, No. 16-72114-JHH, 2018 WL 1902491, at *1-3 (Bankr. N.D. Ala. Apr. 19, 2018); *In re Williams*, No. 15-71767, 2018 WL 832894, at *8-11 (Bankr. W.D. Va. Feb. 12, 2018); *Allen v. Fitzgerald, Tr. for Region Four*, No. 5:18-CV-00057, 2019 WL 6742996, at *5-6 (W.D. Va. Dec. 11, 2019); and *Mikulin v. Upright, et al.*, AP No. 19-80024-JJR (Bankr. N.D. Ala.), Complaint [Dkt. 1].

by reason of Upright's violations of § 1962(c). Their injury stems from the above-described predicate acts.

76.     Plaintiffs seek all legal and equitable relief as allowed by law, including, *inter alia,* actual damages, treble damages, equitable relief, forfeiture as deemed proper by the Court, attorney's fees and all costs and expenses of suit, and pre- and post-judgment interest.

## SECOND CAUSE OF ACTION

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")
### 18  U.S.C. § 1962(d)

77.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out fully herein. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

78.     Plaintiff brings this Count against each Defendant (referred collectively as UpRight). At all relevant times, UpRight and Fenner were associated with the Fast Fee Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, they agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Fast Fee Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). Under Section 1962(d), it is unlawful for "any person to conspire to violate" Section 1962(d), among other provisions. 18 U.S.C. § 1962(d).

79.     UpRight and Fenner conspired to violate Section 1962(c), as alleged more fully above, by conducting the affairs of the Fast Fee Enterprise through a pattern of racketeering activity, as incorporated by reference below.

### A.     PERSON.

80.     At all relevant times, UpRight was a "person" under 18 U.S.C. § 1961(3) because it is a legal entity (or entities) capable of holding, and do hold, "a legal or beneficial interest in

property." Specifically, UpRight operates a nationwide bankruptcy law firm that purports to assist clients with various bankruptcy needs.

### B.  FAST FEE ENTERPRISE.

81.     For efficiency and avoiding repetition, for purposes of this claim, Plaintiffs incorporates by reference the paragraphs set out above concerning the "Fast Fee Enterprise."

### C.  INTERSTATE COMMERCE.

82.     For efficiency and avoiding repetition, for purposes of this claim, Plaintiffs incorporates by reference the paragraphs set out above concerning the "Interstate Commerce."

### D.  PATTERN OF RACKETEERING ACTIVITY.

83.     For efficiency and avoiding repetition, for purposes of this claim, Plaintiffs incorporates by reference the paragraphs set out above concerning the "Pattern of Racketeering Activity."

### E.  DAMAGES.

84.     UpRight's violations of law and its pattern of racketeering activity directly and proximately caused Plaintiffs' injury because Plaintiff lost collateral and incurred additional debt, as described above in allegations expressly incorporated herein by reference.

85.     UpRight's racketeering activities proximately caused Plaintiffs' injuries and those of the putative class. But for UpRight's conduct, Plaintiffs would not have lost collateral and incurred additional debt.

86.     Additionally, UpRight's racketeering activities, which include its violation of 11 U.S.C. § 526(c)(l), voids its contract with Plaintiffs, and Plaintiffs are entitled to recover the full amount of the attorney's fees paid to UpRight.

87.     As described herein, Plaintiffs are "persons" who sustained injury to their property

by reason of Upright's violations of § 1962(d). Their injury stems for the above-described predicate acts and the overt acts in committed in furtherance of the conspiracy.

88.     Plaintiffs seek all legal and equitable relief as allowed by law, including, *inter alia,* actual damages, treble damages, equitable relief, forfeiture as deemed proper by the Court, attorneys' fees and all costs and expenses of suit, and pre- and post-judgment interest.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF 11 U.S.C. § 526

89.     Plaintiffs reallege all prior paragraphs of the Complaint as if set out fully herein. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

90.     This Count is brought by Plaintiffs for damages against UpRight on behalf of the affected Class pursuant to 11 U.S.C. § 526.

91.     That section prohibits a debt relief agency from advising an assisted person or prospective assisted person to "... incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title." 11 U.S.C. § 526(a)(4).

92.     UpRight has intentionally and/or negligently violated the above prohibitions by advising assisted persons after the signing of a Chapter 7 retention agreement to surrender their encumbered vehicle to Sperro LLC for payment of Chapter 7 attorney's fees by Fenner or similar entities or persons. Such violation includes both provisions which prohibit incurring more debt prior to the filing of the Chapter 7 and the payment of attorney's fees through the incurring of more debt.

93.     Based on the violation of the above prohibitions, the contract between Plaintiffs

and UpRight is void pursuant to 11 U.S.C. § 526(c)(l).

94.     Based on the violation of the above prohibitions, UpRight is liable for the return of all paid attorney's fees, actual damages, and for attorney's fees for this class action pursuant to  11 U.S.C. § 526(c)(2).

95.     Based on the violations of the above prohibitions, UpRight has engaged in a clear and consistent pattern in violation of 11 U.S.C. § 526. Accordingly, UpRight should be enjoined from such violative behavior and subjected to an appropriate civil penalty of at least $1,000,000.00 pursuant to 11 U.S.C. §526(c)(5).

96.     Plaintiffs also request any other relief deemed appropriate by the Court as a result of the violations committed by UpRight.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court:

A.     Void the contracts between Plaintiffs and putative Class Members and UpRight;

B.     Order the rescission of the contracts between Plaintiffs and putative Class Members and UpRight;

C.     Enter an order certifying the proposed class and any appropriate subclasses, and appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

D.     Provide injunctive relief as to Count Three to prevent UpRight from any additional violations of 11 U.S.C. § 526;

E.     Award to the Class Members a return of all attorney's fees collected by UpRight from Fenner and any other similar entities or persons;

F.     Award an appropriate civil penalty in excess of $1,000,000.00 for the

continuing clear and consistent pattern of violations;

G.      Award all legal and equitable relief as allowed by law, including, *inter alia,* actual damages, treble damages, equitable relief, forfeiture as deemed proper by the Court, attorney's fees and all costs and expenses of suit, and pre- and post-judgment interest; and

H.      Award any other such relief as this Court deems necessary and just.


## **JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.



Dated: April 3, 2020                                  Respectfully submitted,

                                                      s/ Brad Ponder_____
                                                      J. Bradley Ponder (ASB-0965-P56P)
                                                      Luke Montgomery (ASB-3810-A55M)
                                                      **MONTGOMERY PONDER, LLC**
                                                      2226 1st Avenue South, Unit 105
                                                      Birmingham, AL 35233
                                                      Phone: 205.201.0303
                                                      Fax: 205.208.9443
                                                      brad@montgomeryponder.com
                                                      luke@montgomeryponder.com

                                                      s/ Harry P. Long_____
                                                      Harry P. Long
                                                      Law Offices of Harry P. Long, LLC
                                                      P.O. Box 1468
                                                      Anniston, Alabama 36202
                                                      Telephone: 256.237.3266
                                                      Facsimile: 256.237.3268
                                                      Hlonglegal8@gmail.com

                                                      Attorneys for the Plaintiff