


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA COOK and,<br>WILLIAM COOK,<br><br>Plaintiffs,<br><br>v.<br><br>DEIGHAN LAW LLC,<br>LAW SOLUTIONS CHICAGO LLC,<br>and UPRIGHT LAW, LLC,<br><br>Defendants. | ) | Case No. 1:20-cv-00457-CLM<br><br>U.S. District Court Judge:<br>Honorable Corey L. Maze |

**DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

Defendant Deighan Law LLC, an Illinois limited liability company doing business in the State of Alabama as UpRight Law ("UpRight"),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[2] respectfully moves this Court to dismiss the *Class Action Complaint* [Doc. 1] ("Complaint") filed by Angela and William Cook ("Plaintiffs") on the basis that it fails to state a claim on which relief can be granted. Specifically, UpRight asserts:

(i) Plaintiffs' claims are barred by the doctrine of res judicata because the Bankruptcy Administrator for the Northern District of Alabama (the "BA") previously asserted claims against UpRight in Plaintiffs' bankruptcy case based on the same common nucleus of operative facts, and UpRight settled those claims by *inter alia* paying a

[1] Deighan Law LLC is an Illinois limited liability company that was previously known as Law Solutions Chicago LLC. On June 4, 2019, Law Solutions Chicago LLC filed Articles of Amendment with the Alabama Secretary of State advising that the firm had changed its legal name to Deighan Law LLC. The *Class Action Complaint* includes Law Solutions Chicago LLC and UpRight Law, LLC as defendants. For clarification, in the State of Alabama, Deighan Law LLC does business as UpRight Law (without the "LLC"). Neither UpRight Law, nor UpRight Law, LLC, is a separate legal entity unto itself.

[2] In this motion, citations to a Federal Rule of Civil Procedure will be "FRCP __."

$25,000 sanction to the Chapter 7 Trustee for the benefit of Plaintiffs' bankruptcy estate;[3]

(ii) Plaintiffs' claims are time-barred because they were filed outside the four-year statute of limitations applicable to those claims;

(iii) Plaintiffs lack standing to bring their claims against UpRight because, to the extent they are not barred by (i) or (ii), they remain property of their bankruptcy estate and only the Chapter 7 Trustee is authorized to pursue those claims;

(iv) Plaintiffs fail to satisfy the prerequisites for bringing their claims on behalf of a class;

(v) Plaintiffs fail to satisfy the pleading requirements of FRCP 9(b) applicable to their claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, (the "RICO Act"); and

(vi) Plaintiffs' Complaint is an impermissible "shotgun pleading" prohibited by the Eleventh Circuit because it realleges multiple prior paragraphs of the Complaint into subsequent individual paragraphs.

In support of this motion, UpRight states:

## I. Introduction

This motion is not a defense of UpRight's long-since abandoned participation in a vehicle surrender program offered by Brian Fenner ("Fenner").[4] Instead, this motion focuses on the arguments identified above and articulated more fully *infra*.

[3] A complaint may be dismissed for failure to state a claim on which relief may be granted when the allegations of the complaint and other documents and evidence of which the court is permitted to take judicial notice demonstrate that the claims are barred by res judicata. *See infra* at 13-14.

[4] UpRight reserves the right to explain what its participation in program entailed and, if appropriate, defend itself against allegations that it believes are incomplete or inaccurate.

## II. Statement of Facts[5]

### A. Plaintiffs' Surrender of Their Vehicle

In early October 2015, Plaintiffs located the contact information for UpRight on the internet.[6] On October 8, 2015, the Cooks digitally signed an Attorney Client Base Retainer Agreement for Chapter 7 Bankruptcy Related Services ("Retainer Agreement") with UpRight.[7] That same day, Plaintiffs paid $10.00 to UpRight.[8] UpRight characterized said payment as "Retainer."[9]

In October 2015, during the initial phone conversation with UpRight representatives, Plaintiffs informed UpRight that they intended to surrender the vehicle.[10] UpRight recommended that they turn the vehicle over to Fenner's company, Sperro LLC ("Sperro").[11] UpRight advised Plaintiffs that Sperro would pay the attorney and filing fees for the Cooks' bankruptcy case to UpRight if they surrendered their vehicle (the "Vehicle") to Sperro.[12] UpRight then contacted Sperro on behalf of Plaintiffs to set up an appointment time to pick up the vehicle.[13] Sperro contacted Plaintiffs to confirm the pickup date for the Vehicle.[14]

On October 9, 2015, Plaintiffs and Sperro entered into a Transporting and Storage Authorization Agreement ("TSAA").[15] Plaintiffs did not attach a copy of the TSAA to their Complaint. However, they provided a copy of the TSAA to the BA in the course of their bankruptcy case, *In re Cook*, No. 15-41812-JJR7 (the "Cook Bankruptcy"). A copy of the TSAA

[5] The Statement of Facts is based on (i) allegations in the Complaint, which are taken as true for purposes of this motion, and (ii) evidence established by the record in Plaintiffs' bankruptcy case, two related adversary proceedings, and other cases of which the Court is permitted to take judicial notice. By citing Plaintiff's allegations in this motion, UpRight is not admitting any of them and reserves the right to deny or otherwise challenge any and all such allegations in future pleadings.

[6] Complaint at ¶ 22.

[7] Complaint at ¶ 22.

[8] Complaint at ¶ 22.

[9] Complaint at ¶ 22.

[10] Complaint at ¶ 23.

[11] Complaint at ¶ 23.

[12] Complaint at ¶ 23.

[13] Complaint at ¶ 24.

[14] Complaint at ¶ 24.

[15] Complaint at ¶ 25.

was attached to the BA's *Motion to Examine Debtors' Transactions with Attorney, Order Disgorgement and Other Relief* [Doc. 36] (the "BA's Cook Motion"), filed on January 19, 2016 in the Cook Bankruptcy.[16] The TSAA provided, in part:

> By entering into this agreement, Sperro is authorized, and entitled, to transport the above mentioned vehicle from point of origin to 2534 Bluff Road, Indianapolis, Indiana. Owner acknowledges, accepts and agrees that there is a $75 load fee and a $75 unload fee per vehicle and from point of origin to Sperro's storage facility, pre-mentioned, a fee of $1.85 per mile.
>
> * * *
>
> Owner acknowledges, accepts and agrees to the daily storage fee of $45 per day. Owner also acknowledges, accepts and agrees that the storage fees will begin as of the date that he/she entered into this agreement.
>
> Owner elects to have Sperro perform preventative maintenance care on the above referenced vehicle . . . The Preventative Maintenance Care Package fee is $250 . . . .[17]

The TSAA identifies the Vehicle as a 2015 Nissan Frontier, with a vehicle identification ("VIN") ending in 9817.[18] Mr. Cook signed the TSAA.[19] UpRight is not a party to the TSAA, nor did any UpRight representative sign the TSAA.

On October 13, 2015, a local towing company picked up the Vehicle on behalf of Sperro.[20] The Vehicle was then transported from Alabama to Indiana for storage.[21]

Plaintiffs allege that after Sperro transported their vehicle to Indiana, the company "charged excessive transportation and storage fees, leaving Plaintiffs with the debt but no collateral to return to the bank."[22] However, Plaintiffs do not allege what those transportation and storage fees were, nor do they allege that they paid, or were asked to pay, any of the fees. As demonstrated by the TSAA that Mr. Cook signed, the possibility that Plaintiffs might be charged fees was

---

[16] *See* BA's Cook Motion attached hereto as **Exhibit 1**. A copy of the TSAA is attached to the BA's Cook Motion as part of **BA Exhibit B**.

[17] *See* Ex. 1, TSAA at p. 1.

[18] *See* Ex. 1, TSAA at p. 1.

[19] *See* Ex. 1, TSAA at p. 2.

[20] Complaint at ¶ 25.

[21] Complaint at ¶ 25.

[22] Complaint at ¶ 25.

disclosed to him prior to the Vehicle being surrendered. There is no allegation that the fees, if any, that were charged by Sperro exceeded what was provided in the TSAA.

After Plaintiffs surrendered their Vehicle to Sperro, they received an email from UpRight advising them that their attorney's fee and filing fee had been paid.[23]

Plaintiffs allege:

> UpRight concealed the facts related to its participation in the Fast Fee Scheme from the Plaintiffs. UpRight did not disclose its participation in the Fast Fee Scheme to Plaintiffs, through documents or otherwise, by Upright. Due to this fraudulent concealment, Plaintiffs were unaware that they were being victimized by UpRight. Further, Plaintiffs were unable to discover these critical facts through the exercise of reasonable diligence.[24]

Plaintiffs do not allege specifically what "facts were concealed." UpRight's participation in Fenner's vehicle surrender program was fully disclosed to Plaintiffs. UpRight informed Plaintiffs that they could surrender their Vehicle to Sperro and that Sperro, in turn, would take possession of the Vehicle and pay Plaintiffs' attorney fee and filing fee. All of this occurred. Plaintiffs do not allege otherwise.

Plaintiffs next allege:

> UpRight and Fenner's Fast Fee Scheme caused Plaintiffs to incur more debt, and less collateral, in contemplation of filing their Chapter 7 case. This conduct constitutes a violation of 11 U.S.C. § 526 and the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c) and (d).[25]

However, Plaintiffs do not identify any debt that they incurred which Mr. Cook had not already agreed to under the TSAA prior to surrendering the Vehicle to Sperro. They do not allege that they paid any amounts to Sperro or that Sperro asked them to pay any fees.

**B. Plaintiffs' Bankruptcy Case**

On November 9, 2015, one of UpRight's Alabama partners, Mariellen Morrison ("Morrison"), filed a Chapter 7 bankruptcy petition on behalf of Plaintiffs.[26] Plaintiffs' debt to

---

[23] Complaint at ¶ 26.

[24] Complaint at ¶ 27.

[25] Complaint at ¶ 28. Hereafter, references to a section in Title 11 (the "Bankruptcy Code") will be "Section __" or "§ __." References to a section in the RICO Act will be "RICO § __."

[26] *See* Cook Bankruptcy, Chapter 7 Voluntary Petition, Doc. 1, attached hereto as **Exhibit 2**.

Nissan Motor Acceptance Corporation ("Nissan") related to the Vehicle was listed in Schedule F as an unsecured claim.[27] Later, Nissan filed a claim in the amount of $17,020.78 arising from its sale of a 2015 Nissan Frontier with a VIN ending in 9817 to Mr. Cook (the "Nissan Claim").[28] Nissan identified the claim as "unsecured."[29]

On February 3, 2016, the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court") issued a discharge order, which *inter alia* discharged the unsecured claims asserted against Plaintiffs' bankruptcy estate.[30]

**C. The BA's Motion and Adversary Complaint**

As previously indicated, on January 19, 2016, the BA filed the BA's Cook Motion against UpRight and Morrison in which he asked the Court to (i) examine, *inter alia*, whether the Fee Disclosure, SOFA, and schedules violated §§ 526(a) and 707(b)(4), and (ii) order the disgorgement of all fees paid to UpRight and Morrison.[31] The motion is clear that the relief sought was primarily based on UpRight's referral of Plaintiffs to Sperro and their subsequent surrender of the Vehicle to that company.[32] Notice of the BA's Cook Motion and the hearing on that motion were mailed to Plaintiffs on January 21, 2016.[33]

Thereafter, on March 28, 2016, the BA filed a *Complaint for Declaratory Relief, Disgorgement, Civil Penalties, Sanctions and Injunctive Relief* (the "BA's Cook Complaint") against UpRight and Morrison[34] alleging essentially the same facts related to Plaintiff's surrender of the Vehicle to Sperro and the documents filed on behalf of Plaintiff.[35] Among other things, the

[27] *See* Ex. 2, Schedule F to Bankruptcy Petition, at p. 24 of 51.

[28] *See* Nissan Claim attached hereto as **Exhibit 3** at pp. 2-4.

[29] *See* Ex. 3, Nissan Claim at p. 2, No. 9.

[30] *See Order of Discharge*, Doc. 46 in the Cook Bankruptcy, attached hereto as **Exhibit 4**.

[31] *See* Ex. 1, BA Cook Motion, at pp. 7-8.

[32] *See* Ex. 1, BA Cook Motion, generally.

[33] *See Certificate of Notice of Hearing*, Doc. 38 in the Cook Bankruptcy, attached hereto as **Exhibit 5**.

[34] *See* Cook Bankruptcy, Doc. 74, and *Corbett v. Morrison (In re Cook),* AP No. 16-40016-JJR (Bankr. N.D. Ala.) ("First Cook Adversary" or "1st Cook AP"), Doc. 1 ("BA's Cook Complaint"). A copy of the BA's Cook Complaint that was filed in the First Cook Adversary is attached hereto as **Exhibit 6**. The BA's Cook Complaint also named "UpRight Law LLC" as a defendant. At that time, the only UpRight-affiliated legal entity named UpRight Law LLC was a Virginia limited liability company that only provided services in the Commonwealth of Virginia. In other states (not Alabama), "UpRight Law LLC" was an assumed name under which UpRight did business.

[35] *See* Ex. 6, BA's Cook Complaint, generally.

BA alleged that UpRight and Morrison had violated § 526(a) and sought civil penalties and injunctive relief pursuant to § 526(c)(5).[36]

Thereafter, on April 5, 2016, the BA filed an *Amended Complaint for Declaratory Relief, Disgorgement, Civil Penalties, Sanctions and Injunctive Relief* (the "BA's Amended Cook Complaint").[37] The BA's Amended Cook Complaint was essentially the same as the original complaint and sought the same relief.[38]

**D. Settlement of the BA's Complaint and Order Approving the Settlement**

The BA, UpRight, and Morrison resolved the First Cook Adversary and the Mikulin Adversary via a September 13, 2016 settlement agreement.[39] The Settlement provided, in relevant part:

> WHEREAS. a dispute has arisen between the Parties relevant to two bankruptcy cases pending before the United States Bankruptcy Court for the Northern District of Alabama, more particularly described as follows:
>
> a. In re William Earl Cook and Angela Jones Cook
> Bankruptcy Case Number 15-41812-JJR7
> Adversary Proceeding Number 16-40016-JJR
> (As consolidated with Adversary Proceeding 16-80025-CRJ)
>
> b. In re Diane Marie Mikulin
> Bankruptcy Case Number 15-83322-CRJ
> Adversary Proceeding 16-80025 CRJ
> (As consolidated with Adversary Proceeding 16-40016-JJR)
>
> (hereinafter the "Disputed Cases"); and,
>
> * * *
>
> WHEREAS, the Parties now desire to settle and compromise the Disputed Cases by entering into this Agreement;
>
> * * *

[36] *See* Ex. 6, BA's Cook Complaint at 11-14.

[37] *See* BA's Amended Cook Complaint attached hereto as **Exhibit 7**. Also on April 5, 2016, the BA filed a nearly identical *Complaint for Declaratory Relief, Disgorgement, Civil Penalties, Sanctions and Injunctive Relief* (the "BA's Mikulin Complaint") against UpRight and Morrison in *Corbett v. Morrison (In re Mikulin)*, AP No. 16-80025 (Bankr. N.D. Ala.) ("Mikulin Adversary" or "Mikulin AP"). On May 27, 2016, the Bankruptcy Court entered an order consolidating the Mikulin Adversary and the First Cook Adversary "for purposes of discovery and trial . . . ." *See* 1st Cook AP, Doc. 31, attached hereto as **Exhibit 8**.

[38] *See* Ex. 7, BA's Amended Cook Complaint, generally.

[39] *See* 1st Cook AP, Doc. 57-1 (the "Settlement"), attached hereto as **Exhibit 9**.

3. Payment in Cook

> Twenty-Five Thousand ($25,000.00) Dollars of the sum referred to in Paragraph 2 shall be made available to the Bankruptcy Trustee ("Cook Trustee") of *the Bankruptcy Estate of William Earl Cook and Angela Jones Cook,* Bankruptcy Case Number 15-41812-JJR7 ("Cook Bankruptcy Estate"), for such administration as the Cook Trustee may deem necessary, appropriate or required under the laws of the United States or pursuant to any valid order of any Court properly asserting jurisdiction over said Cook Bankruptcy Estate. The BA shall file a motion seeking an order from the U.S. Bankruptcy Court, Northern District of Alabama:
>
> (1) authorizing and requiring UpRight's attorney of record to disburse to the Cook Trustee said funds in an amount sufficient to pay *all costs of administration and claims in the Cook Bankruptcy Estate*, in a sum not to exceed Twenty-Five Thousand ($25,000.00) dollars; and,
>
> (2) *if any excess funds remain after said disbursement to the Cook Trustee, authorize and require UpRight's attorney of record to disburse said funds to the registry of the U.S. Bankruptcy Court, Northern District of Alabama*.[40]

The individuals who executed the Settlement included:

- J. Thomas Corbett, U.S. Bankruptcy Administrator;
- W. Dennis Schilling, Counsel for Rocco Leo, as Trustee for the Cook Bankruptcy Estate;
- Valrey W. Early, III, Attorney for UpRight and Morrison;
- Kevin W. Chern, Managing Partner of UpRight; and
- Mariellen Morrison.[41]

The Settlement is clear that the BA's claims, which sought *inter alia* a civil penalty pursuant to § 526(c)(5) based on UpRight's alleged pre-petition conduct related to Plaintiffs' surrender of the Vehicle to Sperro, were fully and finally resolved with a significant $25,000 payment to the Chapter 7 Trustee of Plaintiffs' estate ("Cook Trustee").

[40] *See* Ex. 9, Settlement at pp. 1-3 (emphases added).

[41] *See* Ex. 9, Settlement at pp. 5-8 (multiple signature pages).

On September 23, 2016, the BA filed a *Motion for Court to Approve Compromise*, which attached the Settlement as Exhibit A.[42] On October 27, 2016, the Bankruptcy Court held a hearing on that motion.[43] During that hearing, counsel for the BA stated:

> I think the $50,000 . . . [I]t's a real penalty and a real sanction. And to report it to the Alabama Bar and having to hire a lawyer . . . [W]e've done the best we can. It's a hard case. *There's factual problems on both sides of the table*.[44]

Neither the Bankruptcy Court, nor the BA, were aware of any other case in the Northern District involving an UpRight client's surrender of a vehicle to Sperro.[45]

The Court approved the Settlement and entered an *Order Approving Compromise* ("Settlement Approval Order") that same day.[46] Later, in an unrelated proceeding involving the BA and UpRight, the same bankruptcy judge who entered the Settlement Approval Order recounted that, while the allegations in the BA's Cook Complaint had "concerned" him, he ultimately approved the Settlement because the BA had "legitimately addressed" those allegations and because "knowing Mr. Landry [counsel for the BA] . . . he [*i.e.*, Mr. Landry] got comfortable that there was *no culpability on behalf of UpRight* . . . ."[47]

**E. Plaintiffs' Complaint**

On April 3, 2020, Plaintiffs filed their *Class Action Complaint* (previously defined as the "Complaint"),[48] which is the subject of this motion. The thrust of Plaintiffs' allegations is:

- UpRight referred certain clients to a third party, Brian Fenner (previously defined as "Fenner"), who owned and operated two companies, Fenner & Associates and Sperro.[49]

---

[42] *See* 1st Cook AP, Doc. 57, attached hereto as **Exhibit 10**.

[43] *See* Transcript of October 27, 2016 Hearing on the BA's *Motion for Court to Approve Compromise*, filed in *Law Sols. Chicago LLC v. Corbett*, No. 18-00677 (N.D. Ala.), Doc. 23-3 at 61-83, attached hereto as **Exhibit 11.** Citations to pages in Exhibit 11 refer to the page numbers of the October 27, 2016 Hearing Transcript, not the page numbers of Doc. 23-3.

[44] Ex. 11 at 13:24 – 14:11 (emphasis added).

[45] Ex. 11 at 14:19 – 15:7.

[46] 1st Cook AP, Doc. 61, attached hereto as **Exhibit 12**.

[47] *See* Transcript of August 24, 2017 Hearing on *Show Cause Order* in *In re White* , No. 17-40093-JJR7, filed in *Law Sols. Chicago LLC v. Corbett*, No. 18-00677 (N.D. Ala.), Doc. 34-8, at 132:16-25 (emphasis added). A copy of the August 24, 2017 Transcript is attached hereto as **Exhibit 13**. Citations to pages in Exhibit 13 refer to the page numbers of the August 24, 2017 Transcript, not the page numbers of Doc. 34-8.

[48] Morrison is not named as a defendant in the Complaint.

[49] Complaint at ¶ 16.

- Fenner offered to pay the attorney's fees and filing fees of UpRight's clients who surrendered their vehicles to his company, Sperro.[50]
- The clients whom UpRight referred to Sperro incurred additional debt.[51]
- UpRight referred Plaintiffs to Sperro.[52]
- Plaintiffs surrendered their Vehicle to Sperro.[53]
- Fenner or Sperro paid Plaintiffs' attorney's fee and filing fee to UpRight.[54]
- Plaintiffs incurred debt and lost collateral as a result of their surrendering the Vehicle to Sperro.[55]
- UpRight's alleged conduct:
  - Violated § 526(a)(4), which prohibits a debt relief agency from advising an assisted person to incur more debt in contemplation of such person filing a bankruptcy case or to pay an attorney for services performed as part of preparing for or representing the person in a bankruptcy case;[56]
  - Violated RICO Act § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[57]
  - Violated RICO Act § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."[58]

---

[50] Complaint at ¶ 16.
[51] Complaint at ¶ 16.
[52] Complaint at ¶ 23.
[53] Complaint at ¶ 25.
[54] Complaint at ¶ 26.
[55] Complaint at ¶ 28. Plaintiffs do not describe the debt they purportedly incurred.
[56] Complaint at ¶¶ 2, 28, 33(a), 46, 53, 91.
[57] Complaint at ¶¶ 39-40.
[58] Complaint at ¶ 78.

Based on UpRight's alleged violations of § 526(a)(4) and RICO Act §§ 1962(c) and (d), Plaintiffs seek relief on behalf of themselves and anyone who satisfies the following proposed class criteria:

- "Any person who incurred additional debt in order to pay or have paid an attorney's fee to UpRight."
- "Any person that surrendered their vehicle(s) and UpRight collected attorney's fees from Fenner, Fenner & Associates, Sperro LLC, or any other similar entity or person in exchange."[59]

In their prayer for relief, Plaintiffs seek an order:

- Voiding the retention agreements between them and the putative class members and UpRight pursuant to § 526(c)(1).[60]
- Rescinding the contracts between them and the putative class members and UpRight.[61]
- Certifying the proposed class and any appropriate subclasses, and appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel.[62]
- Providing injunctive relief as to Count Three to prevent UpRight from any additional violations of § 526.[63]
- Awarding to the Class Members a return of all attorney's fees collected by UpRight from Fenner and any other similar entities or persons.[64]
- Awarding a civil penalty in the amount of at least $1,000,000 "for the continuing clear and consistent pattern of violations."[65]

---

[59] Complaint at ¶ 30.

[60] Complaint at p. 25, subsection A. This relief is moot, as Plaintiffs are longer represented by UpRight and instead are represented by Plaintiffs' counsel in this case.

[61] Complaint at p. 25, subsection B. Plaintiffs do not provide a statutory or other legal basis for seeking this relief.

[62] Complaint at p. 25, subsection C.

[63] Complaint at p. 25, subsection D. Plaintiffs do not identify the injunctive relief being sought pursuant to § 526.

[64] Complaint at ¶ p. 25, subsection E.

[65] Complaint at p. 25, subsection F.

- Awarding all legal and equitable relief as allowed by law, including, inter alia, actual damages, treble damages, equitable relief, forfeiture as deemed proper by the Court, attorney's fees and all costs and expenses of suit, and pre- and post-judgment interest.[66]
- Awarding any other such relief as this Court deems necessary and just.[67]

The allegations in Plaintiffs' Complaint, and the facts established in public filings and documents of which this Court is permitted to take judicial notice, demonstrate that:

(i) Plaintiffs' claims are barred by the doctrine of res judicata;

(ii) Plaintiffs' claims have been filed outside the four-year statute of limitations applicable to those claims;

(iii) Plaintiffs lack standing to bring their claims against UpRight because those claims are property of their bankruptcy estate;

(iv) Plaintiffs fail to satisfy the prerequisites for bringing their claims on behalf of a class;

(v) Plaintiffs fail to satisfy the pleading requirements of FRCP 9(b) applicable to their claims brought pursuant to the RICO Act; and

(vi) Plaintiffs' Complaint is an impermissible "shotgun pleading."[68]

Plaintiffs have failed to state, and cannot amend their Complaint to state, a claim against UpRight on which relief can be granted. The Complaint, therefore, should be dismissed with prejudice.

## III. Argument

### A. Plaintiffs' Claims Are Barred by the Doctrine of Res Judicata

#### 1. Legal Standard

In *Seminole Tribe of Florida v. Biegalski*, 757 F. App'x 851 (11th Cir. 2018), the Eleventh Circuit explained the standard for determining whether a claim is barred by res judicata as follows:

---

[66] Complaint at p. 25, subsection G.

[67] Complaint at p. 25, subsection H.

[68] UpRight is not waiving additional arguments it may have as to why Plaintiffs are not able to obtain relief on their own behalf or on behalf of a class.

> "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). Claim preclusion "forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id*. (quotation marks omitted). Issue preclusion, in contrast, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id*. (quotation marks omitted).
>
> Both doctrines are designed to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Id*. (quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). They do so by precluding parties from contesting matters they have had a full and fair opportunity to litigate. Id.
>
> Ordinarily, claim preclusion applies if all four of the following elements are present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." [*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)]. Where claim preclusion applies, it precludes relitigation not only of "the precise legal theor[ies] presented in the prior case, *but [of] all legal theories and claims arising out of the same nucleus of operative fact*." *Lobo v. Celebrity Cruises, Inc*., 704 F.3d 882, 893 (11th Cir. 2013) (quoting *NAACP v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990)).

*Seminole Tribe*, 757 F. App'x at 856-57 (emphasis added).

Res Judicata is an appropriate basis for dismissing with prejudice Plaintiff's Complaint for failure to state a claim on which relief may be granted. In *Solis v. Global Acceptance Credit Co., L.P.*, 601 F. App'x 767 (11th Cir. 2015), the Eleventh Circuit stated:

> Although res judicata is not a defense under Rule 12(b), and generally should be raised as an affirmative defense under Rule 8(c), Fed.R.Civ.P., it may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint. *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir.1982). Here, it was clear on the face of the complaint that Solis had filed a recent action against the same defendants that was dismissed by the district court. And the district court properly considered its own records in resolving the defendants' motion to dismiss. *See* Fed.R.Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding"); *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

*Solis* at 771; *see also Bennick v. Boeing Co.,* No. 10-2090, 2010 WL 11519429 (N.D. Ala. 2010) (at 12(b)(6) motion stage, court may dismiss complaint for failure to state a claim based on res judicata defense) (citing *Marsh v. Butler Cnty. Ala.*, 268 F.3d 1014, 20122 (11th Cir. 2001) (en

banc). In deciding a motion to dismiss, a court may take judicial notice of public records, including public records from other cases. *See Horne v. Potter,* 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.' Fed. R. Evid. 201(b); *see also Universal Express, Inc. v. U.S. SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (per curiam) (citing *Stahl v. U.S. Dep't of Agric*., 327 F.3d 697, 700 (8th Cir. 2003)); *Bryant*, 187 F.3d at 1278, (R1–33 at 2 n. 1)").

**2. The BA Could Have Asserted Claims under the RICO Act Against UpRight in the BA's Cook Motion and the BA's Cook Complaint.**

Section 157(a) of Title 28 provides:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a).

In *Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009), the Eleventh Circuit explained the standard for exercising "related to" jurisdiction under § 157 as follows:

> We have adopted the following guidelines for determining whether a civil proceeding is "related to" a bankruptcy proceeding:
>
>> The ... test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
>
> *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990) (quoting *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

*Lawrence*, 573 F.3d at 1270-71. Applying the above test to the *Lawrence* debtor's claims, including a RICO claim, against the defendants, the Eleventh Circuit concluded:

> The outcome of [the debtor's] civil suit clearly could have an effect on the handling and administration of his bankruptcy estate. All of [the debtor's] civil claims fall

> within the scope of the Barton doctrine because they are "related to" his bankruptcy proceeding.

*Id*. at 1271. Other courts have similarly held that "related to" jurisdiction exists over a debtor's RICO claim. *See DePaola v. Nissan Hosp. Am., Inc.*, No. 1:04CV267-W, 2005 WL 2122265, at *1 n.4 (M.D. Ala. Aug. 29, 2005) (court had "related to" jurisdiction over trustee's RICO claim, which "could conceivably result in additional assets to augment the estate for the benefit of its creditors.") (citing *In re Lemco Gypsum, Inc.*, 910 F.2d at 788); *Goldsmith v. Massad (In re Fiorillo)*, 494 B.R. 119, 133-34 (Bankr. D. Mass. 2013) (Chapter 7 trustee's adversary complaint seeking to impose civil liability on defendants pursuant to RICO Act had the potential of augmenting the debtor's estate and thus fell within the bankruptcy court's "related to" jurisdiction conferred by 28 U.S.C. § 157(a)); *Lee v. Ahne Law, P.C. (In re Basic Food Grp., LLC)*, Adv. No. 15-01119, 2016 WL 3677673, at *6 (Bankr. S.D.N.Y. July 1, 2016) (Debtor's RICO claims "[fell] within the Court's 'related to' jurisdiction as being non-core since that jurisdiction is broad enough to encompass claims, like the RICO Claims, 'owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 . . . .'") (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995)).

Based on the above authority, the BA could have asserted RICO claims against UpRight in the BA's Cook Motion and the BA's Cook Complaint, as such claims would have fallen within the Bankruptcy Court's "related to" jurisdiction.

**3. Application of Res Judicata Factors to Plaintiffs' Claims**

The factors for determining whether a claim is barred by res judicata apply to Plaintiffs' claims as follows:

1. Final Judgment on the Merits: A settlement agreement that is approved by a bankruptcy court and in accordance with due process is a final judgment on the merits. *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 1985). Here, the Bankruptcy Court approved the Settlement after notice of and a hearing on the BA's *Motion for Court to Approve*

*Compromise*, filed in the BA's Cook Adversary.[69] Thus, the Bankruptcy Court's Settlement Approval Order constituted a final judgment on the merits.

2. Decision Rendered by a Court of Competent Jurisdiction: The Bankruptcy Court was a court of competent jurisdiction to issue the Settlement Approval Order, which resolved the BA's Cook Adversary.

3. The Parties, or Those in Privity With Them, Are Identical in Both Suits:

In *Mennen v. Onkyo Corp.*, 248 F. App'x 112 (11th Cir. 2007), the Eleventh Circuit stated:

> 11 U.S.C. § 541(a) "establishes a debtor's bankruptcy estate" as including "all legal and equitable interests of the debtor in property as of the commencement of the case." *In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004). "This includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." *Id*. Said another way, the "*bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy*." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003). Furthermore, *"[i]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim*." *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994); *accord Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).

*Mennen*, 248 F. App'x at 113 (emphasis added); *see also Leo v. Alfa Mut. Ins. Co.*, No. 13-cv-01826-RBP, 2013 WL 6490226 (N.D. Ala. Dec. 10, 2013) ("'When a debtor files for bankruptcy, '[a] bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy.'") (quoting *O'Halloran*, 350 F.3d at 1202 (11th Cir. 2003), which cites 11 U.S.C. §§ 541–42)); *In re Baker*, No. 08-42247-JJR, 2009 WL 3854103, at *6 (Bankr. N.D. Ala. Nov. 17, 2009) ("When a bankruptcy case is commenced, the trustee steps into the shoes of the debtor, and whatever interest or rights the debtor might hold becomes property of the estate.").

As one court has explained:

> The trustee has the power to stand in the shoes of the debtor and only the trustee "has standing to bring any suit that the debtor could have instituted had it not petitioned for bankruptcy." [*In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 437 (S.D.N.Y. 1993)]. Put more directly, "[i]f a cause of action belongs to the estate, creditors may bring such an action *only if the Trustee abandons it* or otherwise allows the creditors to pursue it independently." *Id*. (citing 11 U.S.C. § 554).

[69] *See* Ex. 10, 11, and 12.

> *Because the trustee acts for the benefit of the estate as a whole, claimants may be prohibited from pursuing such actions and are bound by the outcome of the trustee's action. Id.*

*In re Salander (Salander II)*, 472 B.R. 213, 217 (Bankr. S.D.N.Y. 2012) (emphasis added).

The claims that the BA could have asserted were not limited to claims for relief under the Bankruptcy Code. They included RICO claims as well.

In bringing the BA's Cook Complaint, which *inter alia* alleged that UpRight violated § 526(a) and sought relief pursuant to § 526(c)(5), the BA stood in the shoes of Plaintiffs, just as the Cook Trustee would have if he had brought the claim.[70] At no point did the BA or the Cook Trustee abandon any aspect of the BA's § 526 claim, nor do Plaintiffs allege that the BA failed to exercise due care in prosecuting that claim.[71]

Recently, Plaintiffs' counsel filed a class action complaint against UpRight on behalf of Diane Marie Mikulin, the same debtor in whose case the BA had filed the BA's Mikulin Complaint, which was resolved by the Settlement.[72] The 2019 Mikulin Complaint sought relief on behalf of herself and a similarly-defined class of former UpRight clients based on UpRight's alleged violation of § 526.[73] UpRight responded to the 2019 Mikulin Complaint by filing a motion to dismiss that asserted *inter alia* Ms. Mikulin's claims were barred by the doctrine of res judicata.[74]

On March 12, 2020, the Honorable James J. Robinson conducted a hearing on UpRight's motion to dismiss and, in a bench ruling, stated:

---

[70] The BA "regularly appear[s] before the United States Bankruptcy Courts on all aspects of bankruptcy matters for the purpose of assisting the Courts in insuring that bankruptcy cases are administered properly, and in conformance with applicable laws and procedures." *See* www.alnb.uscourts.gov/bankruptcy-administrator; *see also* www.alnba.uscourts.gov/about-ba ("The [BA] oversees the administration of estates and supervises trustees and other estate fiduciaries.").

[71] "'In determining whether the Trustee has met [the duty under Section 704(1)], the applicable test is whether the Trustee has exercised due care, diligence, and skill as measured by a reasonable person standard, *i.e.*, whether the Trustee has acted as an ordinarily prudent person would have acted under similar circumstances and with a similar purpose.'" *In re Salander (Salander I)*, 450 B.R. 37, 47 (Bankr. S.D.N.Y. 2011) (quoting *In re Lundborg*, 110 B.R. 106, 109 (Bankr. D. Conn. 1990)).

[72] *See Mikulin v. Law Sols. Chicago, LLC (In re Mikulin)*, Adv. No. 19-80024-JJR (the "2019 Mikulin Adversary"), Doc. 1 (Bankr. N.D. Ala.) (the "2019 Mikulin Complaint"). A copy of the 2019 Mikulin Complaint is attached hereto as **Exhibit 14**.

[73] *See* Ex. 14, 2019 Mikulin Complaint, generally. Ms. Mikulin did not seek relief under the RICO Act.

[74] *See Defendant's Motion to Dismiss Complaint for Failure to State a Claim on Which Relief Can Be Granted*, Doc. 12 in the 2019 Mikulin Adversary ("UpRight's Mikulin Motion"), attached hereto as **Exhibit 15**.

> I'm going to grant the motion to dismiss without prejudice and this is my reason for that, is the class representative, Ms. Mikulin, Mikulin was, has an identity of interest with the Bankruptcy Administrator in that case, in the case that the Bankruptcy Administrator filed against UpRight Law and Law Solutions.[75]

While UpRight Law disagreed with Judge Robinson's decision not to dismiss the 2019 Mikulin Complaint with prejudice, the reasoning articulated by Judge Robinson for dismissing the complaint was in line with the case law cited above. Ms. Mikulin did not appeal Judge Robinson's decision, so it is a final judgment on the merits.

Applying these facts to the third prong of res judicata, it is beyond dispute that the BA and the Cook Trustee, who approved and executed the Settlement Agreement and accepted payments under the Settlement on behalf of Plaintiffs' bankruptcy estate, were in privity with one another, *and with Plaintiff*, as it relates to the Settlement. *See Martin*, 490 F.3d at 1277 ("[I]t is beyond dispute that the parties in both cases are identical. Although the Trustee stood in the shoes of [the debtor] during this phase of the litigation, that is no impediment to considering the parties identical in the res judicata analysis."). Thus, the third prong of res judicata is satisfied.

4. The Same Cause of Action Is Involved in Both Cases: Where two cases "arise of the same nucleus of operative facts and involve the same factual predicates," they are identical for purposes of res judicata. *Martin*, 490 F.3d at 1277 (citing *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)). "'[R]es judicata applies not only to the exact legal theories advanced in the prior case, but to *all legal theories and claims* arising out of the same nucleus of operative facts.'" *Solis*, 601 F. App'x at 771 (quoting *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993)) (emphasis added).

Here, Plaintiffs' claims in the Complaint, and the BA's claims in the BA's Cook Complaint, arise from the same nucleus of operative facts related to UpRight's referral of Plaintiffs to Fenner, Plaintiffs' surrender of the Vehicle to Sperro, and the payment of Plaintiffs' attorney's fee and filing fee by Fenner or Sperro to UpRight. These facts form the same factual predicates for the claims asserted in the BA's Cook Complaint and Plaintiffs' current claims for relief under

[75] *See* Transcript of Mar. 12, 2020 Hearing on UpRight's Mikulin Motion attached hereto as **Exhibit 16**, at 2:14-21.

§ 526 and the RICO Act in their Complaint. Moreover, just as the BA previously sought a civil penalty and injunctive relief pursuant to § 526(c)(5), so too do Plaintiffs in their Complaint.

Based on the above, Plaintiffs' claims against UpRight are barred by the doctrine of res judicata. Their Complaint, therefore, fails to state a claim on which relief can be granted. Plaintiffs cannot cure this defect by amending their Complaint, as the facts related to the BA's Cook Adversary, the Settlement, and the Settlement Approval Order are firmly established and will not change. Thus, the Complaint should be dismissed with prejudice.

**B. Plaintiffs' Claims Are Time-Barred Because They Were Filed Outside the Applicable Four-Year Statute of Limitations.**

The statute of limitations applicable to a RICO civil enforcement action is four years, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987), and "begins to run when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Hosch v. Wachovia Bank, N.A.*, -- Fed. App'x --, 2020 WL 2517053, at *5 (11th Cir. May 18, 2020) (quoting *Lehman v. Lucom*, 727 F.3d 1326, 1328, 1330 (11th Cir. 2013)) (internal quotation marks omitted); *see also Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001)) (citing *Rotella v. Wood*, 528 U.S. 549, 555 (2000)). The four-year statute of limitations also applies to a claim for relief pursuant to § 526(c)(5). *See Collier v. Washington*, 551 B.R. 249, 256 (W.D. La. 2016).

The Supreme Court has explained the reasoning behind allowing the statute of limitations to commence upon a party's discovery of a wrongdoing, even though the party does not realize he or she has an actionable claim, as follows:

> The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

*Rotella*, 528 U.S. at 556.

Here, Plaintiffs were aware of the facts that now form the basis of their claims against UpRight back in October 2015 when they surrendered the Vehicle to Sperro. In their Complaint,

Plaintiffs assert that UpRight's relationship with Sperro was "concealed," yet their allegations make clear that they were aware that UpRight had referred them to Sperro for the purpose of surrounding their Vehicle. Plaintiffs also were aware that they had agreed to pay various fees associated with Sperro's towing, storage, and maintenance of the vehicle. Any concerns Plaintiff may have had at the time about UpRight's relationship with Sperro, or having to pay fees in connection with the surrender of their Vehicle, provided them with a basis to inquire whether they had a claim against UpRight. Thus, the statute of limitations expired on October 13, 2019, four years after Plaintiffs surrendered the Vehicle to Sperro.

Even if Plaintiffs are not deemed to have been aware of sufficient facts to inquire about a possible claim in October 2015, they certainly became aware that potential claims existed against UpRight when the BA filed the BA's Cook Motion on January 19, 2016. Notice of the motion and the hearing on the motion was mailed to Plaintiffs on January 21, 2016.[76] At that point, Plaintiffs had sufficient information to inquire as to whether they had a potential claim against UpRight.

Based on the notice Plaintiffs received of the BA's Cook Motion in January 2016, the four-year statute of limitations expired in January of 2020, over two months prior to the filing of the Complaint. Plaintiffs' claims against UpRight are thus time-barred, and the Complaint should be dismissed with prejudice.

### C. Plaintiffs Lack Standing to Bring Claims Against UpRight that Existed Pre-Petition.

Section 554(d) of the Bankruptcy Code provides:

> Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554(d).

The significance of this Code section was explained by the Eleventh Circuit in *Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268 (11th Cir. 2004):

---

[76] *See* Ex. 5.

> Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code. See 11 U.S.C. § 554(a)-(c). At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate. 11 U.S.C. § 554(d). [Footnote omitted.] *Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate*. *Mobility Systems & Equip. Co. v. United States*, 51 Fed. Cl. 233, 236 (Fed. Cl. 2001) (citing cases); *see Vreugdenhill v. Navistar Int'l Transp. Corp*., 950 F.2d 524, 525–26 (8th Cir.1991).

*Parker*, 365 F.3d at 1272 (emphasis added). Another court has explained:

> Property that is not correctly scheduled remains property of the estate forever, until administered or formally abandoned by the trustee. Thus, in the case of an omitted cause of action, the trustee is the real party in interest and the correct defense is one of standing, i.e., the action is not being prosecuted by the real party in interest which is the trustee, not the debtor. Cases like this must be reopened to permit the trustee to deal with the property of the estate.

*In re Upshur*, 317 B.R. 446, 451–52 (Bankr. N.D. Ga. 2004); *see also Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2nd Cir. 2008) ("While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed. *See* 11 U.S.C. § 554(c), (d); [4 Collier on Bankruptcy ¶ 554.03 (15th ed. 2001)] ('A debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [his] own benefit.' *Kunica v. St. Jean Fin., Inc*., 233 B.R. 46, 53 (S.D.N.Y.1999).").

In Plaintiffs' bankruptcy case, no RICO claims were listed in any of the schedules filed on their behalf.[77] Those claims, therefore, remain property of Plaintiffs' bankruptcy estate and can only be pursued by the Chapter 7 Trustee after the case is reopened.[78] Plaintiffs have no standing to pursue those claims. Thus, the Complaint should be dismissed with prejudice.

---

[77] No § 526 claims were listed in any schedules either. However, those claims have already been pursued by the BA and resolved through the Settlement, which was signed by both the BA and the Cook Trustee.

[78] The Chapter 7 Trustee would be time-barred from bringing those claims. *See* Section III.B, *supra*

### D. Plaintiff Cannot Bring Her Claims as a Class Action

FRCP 23 provides, in part:

> Rule 23. Class Actions:
>
> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a)-(b).

The criteria for Plaintiff's proposed class are:

- "Any person who incurred additional debt in order to pay or have paid an attorney's fee to UpRight."
- "Any person that surrendered their vehicle(s) and UpRight collected attorney's fees from Fenner, Fenner & Associates, Sperro LLC, or any other similar entity or person in exchange."[79]

**1. Plaintiffs' Proposed Class Is Overly Broad, Ambiguous, and Fails to Include Essential Elements to Establish Claims under § 526(c)(2) or RICO Act §§ 1962(c) or (d).**

**a. RICO Act §§ 1962(c) and (d) ("Causes of Action One and Two")**

In Causes of Action One and Two, Plaintiffs seek to represent their proposed class in seeking relief pursuant to RICO Act §§ 1962(c) and (d). In order for a person to pursue a private RICO action, that person must have been "injured in his business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c).

Plaintiffs' proposed class lacks this essential element for bringing a private action under the RICO Act. A person who meets the proposed class criteria is not necessarily "injured" by virtue of anything UpRight did. In fact, to make such a determination would require a fact-specific inquiry into the circumstances of each UpRight client who surrendered a vehicle and then had his or her fees paid by Fenner, Fenner & Associates, Sperro LLC, or any similar entity or person.

Another flaw in Plaintiffs' proposed class definition is its inclusion of the words "any other similar entity or person in exchange" in the second component of that definition. These "catch-all" words render Plaintiff's proposed class definition too ambiguous to be enforceable.

The Complaint is clear that Plaintiffs' RICO claims are based solely on their surrender of the Vehicle to Sperro, the payment of their attorney's fee by Fenner or Sperro, and their alleged incurring of debt. Yet Plaintiffs' proposed class definition applies to any other non-Fenner related

[79] Complaint at ¶ 30.

entity or person that may have paid the attorney's fee of a putative class member and expected to be repaid. Such an entity could include a bank or a family member or any other person or entity who loaned the debtor money to assist in paying Plaintiffs' attorney's fee. Such an arrangement does not presume an injury, nor does it implicate UpRight.

The lack of precision in Plaintiffs' proposed class definition is fatal to their proposed class action. *See Hill v. T-Mobile USA, Inc.*, No. 09-cv-1827-VEH, 2011 WL 10958888, at *5 (N.D. Ala. May 16, 2011), *aff'd* 691 F.3d 1302 (11th Cir. 2012) (citing *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007) ("It is axiomatic that in order for a class action to be certified, a class must exist. Although the text of Rule 23(a) is silent on the matter, a class must not only exist, *the class must be susceptible of precise definition*. There can be no class action if the proposed class is 'amorphous' or 'imprecise.' ") (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1], at 23–47 (Matthew Bender 3d ed.1997) (citations omitted) (emphasis supplied).

Because Plaintiffs' proposed definition fails to limit its scope to persons who were injured as a result of a violation of RICO Act §§ 1962(c) and (d), the Court should dismiss the class action aspect of Plaintiffs' RICO claims.

**b. Section 526(a)(4) ("Cause of Action Three")**

In Cause of Action Three, Plaintiffs seek to represent their proposed class in seeking relief based on UpRight's alleged violation of § 526(a)(4). Section 526(a)(4) provides:

(a) A debt relief agency shall not—

* * *

> (4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4). An essential element of establishing whether a debt relief agency violated § 526(a)(4) is set forth at the beginning of that section. Specifically, the debt relief agency must have *advised the assisted person to incur more debt* for the purposes set forth in § 526(a)(4). This

essential fact is missing from Plaintiffs' proposed class criteria. Without it, Plaintiffs' class could include assisted persons who were referred to Fenner or Sperro by a non-UpRight attorney who participated in the Sperro vehicle surrender program or by another UpRight client.[80]

Another flaw in Plaintiff's proposed class definition is its inclusion of the words "any other similar entity or person in exchange" in the second component of that definition. *See* Section III.D.1.a above.

Because Plaintiff's proposed definition fails to limit its scope to assisted persons whom UpRight *advised* to incur debt and broadly includes entities and person who may have loaned money to an UpRight client with the expectation of getting paid back, the Court should dismiss the class action aspect of Plaintiff's claim for relief under § 526(a)(4).

#### 2. Plaintiffs' Claims May Not Be Pursued as a Class Action Because They Fail to Meet the Prerequisite of Commonality.

The test of whether a plaintiff satisfies the commonality prerequisite requires a determination that "there are questions of law or fact common to the class."[81] See Fed. R. Civ. P. 23(a)(2). Once that prerequisite is established, the court must then consider the following four factors pertinent to the *predominance* of the common questions of fact and law and the *superiority* of a class action as the means of addressing the class members' claims:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;

---

[80] The undersigned counsel does not know whether or to what extent this occurred. However, the defects in Plaintiffs' proposed class are determined by their proposed class definition, not by what future discovery could reveal.

[81] In *Finley v. Carrington Mortg. Servs., LLC (In re Finley)*, No. 08-ap-00192-JJR, 2016 WL 519631 (Bankr. N.D. Ala. Feb. 9, 2016), the Bankruptcy Court discussed the close connection between typicality and commonality, stating:

> "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). The Eleventh Circuit has further explained that "the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." [*Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)].

*Finley*, 2016 WL 519631, at *6.

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, Plaintiffs correctly note several factual questions that are relevant to each putative class member's claims.[82] However, several of those questions require a fact-specific inquiry into each putative class member's circumstances. For example:

a. Whether UpRight's advice and arrangement to surrender the encumbered vehicle to Fenner causes an assisted person to incur more debt prior to filing Chapter 7 for the purpose of paying for attorney services, violating the provisions of 11 U.S.C. § 526(a)(4)?

b. Whether UpRight's clients incurred more debt as a result of the Fast Fee Scheme?

c. Whether the Fast Fee Scheme caused additional injuries to UpRight's clients?[83]

In addition, below is a non-exhaustive list of questions that would need to be individually answered for each putative class member in order to determine whether he or she has a valid claim that UpRight violated § 526(a)(4) or RICO Act §§ 1962(c) and (d) and, if so, the relief to which the class member is entitled.

- What did UpRight represent to the individual with regard to the Sperro program? Did it constitute "advice" within the meaning of Section 526(a)(4)?
- What was the putative class member's perception of UpRight's representations regarding the Sperro program? Did the class member consider those representations to be "advice" or merely informational?
- Did the putative class member express an interest in surrendering his or her vehicle prior to becoming aware of the Sperro program?
- When did the putative class member decide to surrender his or her vehicle to Sperro? Shortly after learning of the Sperro program or months later after initially deciding not to use Sperro?
- Did the putative class member sign an agreement with Sperro? If so, what are the terms of that agreement?
- Did Sperro tow the putative class member's vehicle?

---

[82] *See* Complaint at ¶ 33(a)-(o).

[83] *See* Complaint at ¶ 33(a)-(c). Again, the injury element of RICO claims under §§ 1962(c) and (d) is not included in Plaintiff's proposed class definition.

- Did Sperro store the vehicle?
- Did Sperro charge the putative class member for towing and/or storage fees?
- Did the putative class member pay Sperro for any towing or storage fees?
- Did Sperro return the vehicle to the lienholder?
- Did the lienholder pay Sperro for the return of the vehicle?
- Did the lienholder seek relief against the class member?
- Did Sperro assert a lien on the vehicle? If so, was the lien valid?
- Did Sperro sell the vehicle? If so, did Sperro pay any of the sale proceeds to the lienholder?
- Was the putative class member's bankruptcy estate affected by the surrender of the vehicle to Sperro?
- How was the lienholder's claim affected by the surrender of the vehicle to Sperro?
- Will the putative class member's bankruptcy case need to be reopened?
- To whom does the putative class member's claim belong, the class member, the panel trustee, or his or her estate?
- Is the claim exempted from the estate? If so, in whole or in part?
- Will the panel trustee in the putative class member's case want to abandon the claim or distribute proceeds to creditors?
- Did UpRight file the putative class member's bankruptcy petition or did another attorney file the petition?
- Did the putative class member properly disclose the alleged asset/claim against Upright on his or her petition? If the class member did, what action, if any, did the panel trustee take?

The challenges presented by the fact-intensive inquiries needed to answer the above questions for each putative class member is demonstrated by Plaintiffs' own allegations regarding their surrender of the Vehicle to Sperro. First, Plaintiffs' attorney's fee and filing fee were paid by Fenner or Sperro. Thus, that was not a cause of injury, nor did it qualify as incurring a debt.

Second, while Plaintiffs claim that they incurred debt as a result of the surrender of their Vehicle, they allege no facts as to what those alleged debts were. Certainly, Plaintiffs would know if such debts had in fact been incurred and could allege the amounts (or approximate amounts) in their Complaint. Yet Plaintiffs do not allege that that they paid any fees to Sperro or another

person or entity as a result of the Vehicle surrender. Indeed, they do not even allege that Fenner or Sperro sought to collect any fees from them.

Third, Plaintiffs did not incur any greater debt to Nissan as a result of surrendering the Vehicle. While Plaintiffs claim to have been injured as a result of losing the collateral that secured their loan with Nissan, Nissan never claimed a secured interest in the Vehicle. The Nissan Claim was resolved as an unsecured claim and the debt was discharged in Plaintiffs' bankruptcy case.

The challenges Plaintiffs face in meeting the injury requirement for bringing a private RICO action on their own behalf is representative of the challenges Plaintiffs will face in with regard to each putative class member.

Given the numerous questions that would need to be answered for each class member in order to determine whether he or she has a valid claim under Section 526(a)(4) or RICO Act §§ 1962(c) and (d) and, if so, the relief to which he or she is entitled, a class action is not the proper vehicle for pursuing the claims. The facts that are unique to Plaintiffs' and each putative class member's claims predominate over the facts that are common to their claims.

In addition, a class action is not the superior means to pursue the putative class members' claims. Consolidating all of the class members' claims in a single action would result in cumbersome and time-consuming discovery as to each class member. First, the overwhelming majority of the information and documents needed to answer the above-listed questions *are not within UpRight's custody or control*. Instead, they are in the possession of each putative class member, Fenner, or one of Fenner's entities. This would require Plaintiffs to subpoena documents that likely no longer exist.

Moreover, there is no way to determine whether UpRight Law "advised" a putative class member to incur a debt without testimony from the class member as to his or her recollection of (i) what UpRight represented regarding the vehicle surrender program, and (ii) whether the class member considered it to be "advice" or simply informational. Obtaining such testimony is impractical, to say the least, as it would require Plaintiff to depose dozens of individuals scattered throughout the country.

Significantly, each putative class member faces a unique potentially negative consequence as a result of having a claim belonging to the class member's estate pursued. For example, reopening the bankruptcy cases of class members who filed their bankruptcy cases years ago could have a negative impact on their credit and/or their financial condition—regardless of whether they obtained discharges or dismissed their cases. And while a class member would have the option of opting out of the class, the legal analysis the class member would need to undertake in order to understand the ramifications of participating in the class action would require the assistance of an attorney. This is a burden the class members should not be forced to bear.

The above-described discovery demands alone make Plaintiffs' proposed class action unmanageable for the Court as well as the parties. It is much more appropriate to let each class member control his or her own claim and seek relief if he or she so chooses.

For the above reasons, Plaintiffs' proposed class action fails to satisfy the requirements for commonality.

**3. Plaintiffs' Claims May Not Be Pursued as a Class Action Because They Fail to Meet the Prerequisite of Adequacy.**

"Adequacy analysis requires two inquiries: '(1) whether any substantial conflicts of interest exist between the representatives and the class[,] and (2) whether the representatives will adequately prosecute the action.'" *Dickens v. GC Services Ltd. P'ship*, 706 Fed. Appx. 529, 535 (11th Cir. 2017) (quoting *Valley Drug Co. v. Geneva Pharm., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003)).

With regard to Plaintiffs' proposed class action, a conflict of interest exists by virtue of the fact that Plaintiffs suffered no actual damages, whereas members of her proposed class may have done so. Neither Fenner, nor the lienholder, pursued a claim against Plaintiffs related to the surrender of their Vehicle. Given the lack of actual damages sustained by Plaintiffs, they do not have the same incentive to gather evidence of, and prove, actual damages for the other individual class members. Indeed, it is not in Plaintiffs' best interest to do so. Undertaking to prove actual damages for the individual class members will not result in any actual damage award for Plaintiffs.

Moreover, it will significantly draw out the litigation of Plaintiffs' relatively straightforward claims.

Even if Plaintiffs could cure the conflict of interest related to actual damages, they still would have a conflict with the other class members based on the unique res judicata defense UpRight has to Plaintiffs' claims, which likely do not apply to the other class members' claims.

Plaintiffs also has a conflict with the proposed class members by virtue of the fact that (i) their bankruptcy cases will need to be reopened, (ii) their claims will need to be pursued or abandoned by the trustee, and (iii) any monetary relief they recover may go to their estates.[84] As a result, many (perhaps all) of the putative class members will suffer the negative consequences of having their bankruptcy cases re-opened without any monetary benefit flowing to them personally. Neither Plaintiffs, nor their attorneys, are the appropriate parties to advise these individuals on what they should do.

For these reasons, Plaintiffs' proposed class action fails to satisfy the requirements for adequacy.

**E. Plaintiffs Cannot Bring Their Proposed Class Action on a Nationwide Basis.**

Section 1334 of Title 28 of the U.S. Code provides, in part:

> Bankruptcy Cases and Proceedings
>
> (a) Except as provided in subsection (b) of this section [inapplicable], the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> * * *
>
> (e) The district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction*—
>
> (1) of all the property, wherever located, of the debtor as of the commencement of such case, *and of property of the estate* . . . .

28 U.S.C. § 1334(a) and (e) (emphasis added). In *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012), the Eleventh Circuit explained the limiting effect of this language on a district court's (and bankruptcy court's) jurisdiction over out-of-district bankruptcy estates.

[84] *See* Section III.C, *supra*.

> The Bankruptcy Code provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). Because "[b]ankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate," it follows that "the court's jurisdiction is premised on the debtor and his estate." [*Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004)] (citing 28 U.S.C. § 1334(e)). It is this aspect of a bankruptcy court's jurisdiction that "permits it to 'determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question,'" in that "'[t]he proceeding is "one against the world."'" *Id*. at 448, 124 S.Ct. at 1911 (quoting 16 J. Moore et al., Moore's Federal Practice § 108.70[1] (3d ed. 2004)) (alteration in original). Accordingly, the court administering the bankrupt's estate—the res—is the court with the power to enter orders effecting its distribution and to "adjudicate rights in it that are binding against the world." [*Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel,* 657 F.3d 1159, 1171 (11th Cir.2011) (quoting *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir.1999))].

Alderwoods, 682 F.3d at 969; *see* also Barrett v. Avco Fin. Servs. Mgmt. Co., 292 B.R. 1, 11 (D. Mass. 2003) (district court lacks jurisdiction over claims of putative class members outside the district for relief based on defendant's violation of discharge injunction).

In *Finley*, *supra*, the Bankruptcy Court analyzed whether "a bankruptcy judge, a non-article III judicial officer, [may] exercise jurisdiction over a nationwide class action, bankruptcy adversary proceeding[.]" *Finley*, 2016 WL 519631, at *1. In conducting this analysis, the Honorable James J. Robinson picked up where the previous judge presiding over the case left off, stating:

> Judge Bennett pointed out the split in authority, cited by the parties, on the issue of nationwide class certification under Rule 9023 and found that a bankruptcy court does not have authority to certify a nationwide class for a variety of reasons. Those reasons included the exclusive jurisdiction over property of the estate that is vested in the "home court"—the court where the underlying bankruptcy case was filed—under 28 U.S.C. § 1334(a), (b), and (e); the allocation of jurisdiction between district courts and bankruptcy courts under 28 U.S.C. § 157; the conflict between Rule 9023 class certification and the automatic stay under the Bankruptcy Code—the statutory stay would be violated by an injunction issued by a non-home court that asserted control over a cause of action which was property of the estate; as well as the Bankruptcy Code provisions authorizing only the home court to order the appointment and compensation of professionals, which likewise conflicts with the provisions of Rule 9023 on those same topics.
>
> Specifically, Judge Bennett cited *Alcantara v. Citimortgage, Inc. (In re Alcantara)*, 389 B.R. 270 (Bankr. M.D. Fla. 2008) (class was designated by the plaintiff as only those debtors within the home district); *Guetling v. Household Financial Services, Inc.*, 312 B.R. 699, 704 (M.D. Fla. 2004) ("[I]t appears clear that this Court cannot have jurisdiction over Household's actions concerning debtors involved in

> bankruptcy proceedings in other federal district courts. To the extent those alleged out-of-district class members have claims arising from their bankruptcy proceedings in other districts, those districts are the proper locations to bring those claims or to potentially pursue actions for contempt of any court orders."); *Williams v. Sears, Roebuck and Co. (In re Williams)*, 244 B.R. 858, 866 (S.D. Ga. 2000), *aff'd* 34 Fed. Appx. 967 (11th Cir. 2002) (Table) ("*If the claims raised by Plaintiff on behalf of the putative members of the debtor class are 'property' of each individual debtor's bankruptcy estate, § 1334(e) prohibits this Court—or any court other than '[t]he district court in which [the] case under title 11 is commenced or pending' for that matter—from exercising jurisdiction over that property*."); and *Cline v. First Nationwide Mortgage Corp. (In re Cline)*, 282 B.R. 686, 695 (W.D. Wash. 2002) ("The claims of the putative class members must be brought in the courts where their own bankruptcies are pending. Although Rule 7023 provides for the maintenance of class actions, Rule 9030 expressly cautions that the 'rules shall not be construed to extend . . . the venue of any matters' brought in the bankruptcy courts . . . . To say that the automatic stay is not an individually crafted order and that, therefore, violation claims need not necessarily be brought in the court where the violation occurred ignores the meaning of a 'case' and a 'proceeding' and the vested interest a court has in punishing those who disobey its orders."). [Footnote omitted.]
>
> Those cases indeed support Judge Bennett's ruling that this court does not have the jurisdiction to certify a nationwide class.

*Finley*, 2016 WL 519631, at *2 (emphasis added).

The above authority establishes that the district courts in the jurisdictions in which the putative class members' bankruptcy cases were filed have *exclusive jurisdiction* over the bankruptcy estates in those cases. And, as previously established *supra* in Section III.C, unless the trustees in those cases abandon the putative class members' claims, the trustees have exclusive standing to pursue the claims.

If the Court agrees that Plaintiff's proposed class should be limited to former UpRight clients within this District, the Court should dismiss Plaintiff's class allegations in their entirety with prejudice for failure to state a claim. During the October 27, 2016 hearing on the BA's *Motion for Court to Approve Compromise* in the BA's Cook Adversary, the uncontroverted evidence established that only three former UpRight clients who filed cases in this District had been referred to, and had their attorney's fees paid by, Fenner & Associates.[85] Two of those clients were Plaintiffs and the other was Ms. Mikulin. And as previously shown, Ms. Mikulin's Complaint in

[85] *See* Ex. 11 at 14:19 – 15:7 (COURT: "I'm ready to approve [the Settlement] and I just wanted to let you know my concerns. But if these are the only two car cases that you're able to discover, I know I'm not asking Mr. Landry to stand behind that, but I assume that it is." MR. LANDRY: "I believe it's accurate. You know, I believe it's accurate." UPRIGHT'S COUNSEL: "Yes, sir. It is . . . It is accurate. There are the only two.").

which she sought relief against UpRight based on her surrender of her vehicle to Sperro was dismissed. This leaves Plaintiffs' claims as the only ones remaining in this District. Those claims cannot be pursued as a class action.

**F. Plaintiffs Have Failed to Satisfy the Heightened Pleading Requirements of FRCP 9(b) in Asserting Their RICO Claims.**

"To state a claim for a RICO action based on the prohibited activities of mail and wire fraud, the allegations of the complaint must meet the basic *Twombly/Iqbal* standard and the more stringent requirements of Federal Rule of Civil Procedure 9(b). In general, Rule 9(b) requires a plaintiff to allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Drummond Co., Inc. v. Collingsworth*, No. 2:15-cv-506-RDP, 2016 WL 9980721, at *5 (N.D. Ala. Mar. 8, 2016) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997); *see also Lawrie v. Ginn Dev. Co., LLC*, 656 Fed. App'x 464, 474 (11th Cir. 2016) (In asserting a RICO claim, "Rule 9(b) requires more than an allegation that a misrepresentation was made; it requires a plaintiff to identify with precision what the misrepresentation actually was.").

In addition, a plaintiff in a RICO action "must show (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity that (4) results in an injury to business or property, and (6) that such injury occurred 'by reason of' the substantive RICO violation." *Blackburn v. Calhoun*, No. 2007CV166, 2008 WL 850191, at *4 (N.D. Ala. Mar. 4, 2008) (citing *Williams v. Mohawk Industries, Inc.,* 465 F.3d 1277, 1282-83 (11th Cir.2006)).

Plaintiffs' allegations in support of their RICO claims fail to meet the heightened pleading standards of FRCP 9(b). First, Plaintiffs fail to allege with any degree of specificity the precise statements, documents, or misrepresentations that they contend violate RICO Act §§ 1962(c) and (d). Instead, they generically allege that UpRight "concealed" its participation in the Fenner vehicle surrender program—an allegation which is belied by Plaintiffs' allegations that UpRight

informed them of the program, assisted them to get in contact with Sperro, and notified them once their fees were paid. The surrender of Plaintiffs' Vehicle to Sperro and Sperro's payment of Plaintiff's attorney's fee and filing fee went exactly has UpRight had represented they would. There was no misrepresentation or concealment.

With regard to Plaintiffs' allegation that they incurred debt as a result of the Vehicle surrender, there is no allegation that any such debt incurred was the product of a misrepresentation. On the contrary, Plaintiffs acknowledge that they signed the TSAA prior to surrendering the Vehicle to Sperro. And the terms of the TSAA were clear that Plaintiffs could be responsible for certain fees associated with the surrender. Thus, there was no misrepresentation or concealment with regard to any debt Plaintiffs allegedly incurred.

Second, Plaintiffs fail to identify the time, place, and person responsible for the alleged misrepresentation or concealment. Instead, they simply refer to UpRight generally. This is inadequate.

Third, Plaintiffs fail to allege the manner in which they were misled by any statements by UpRight. Again, Plaintiffs' surrender of their Vehicle went exactly as UpRight had represented it would, and the alleged surrender and towing of the Vehicle went exactly as represented in the TSAA. Plaintiffs have not alleged how they were misled other than their generic statements that they were.

Even if Plaintiffs had sufficiently pled misrepresentation and concealment in accordance with FRCP 9(b), they still need to allege that they were injured *by reason of a substantive RICO Act violation*. Again, Plaintiffs' allegations do not support the argument that they incurred debt or were otherwise harmed by reason of an alleged RICO violation by UpRight.

- Plaintiffs surrendered the Vehicle, which is what they intended to do before ever learning of the Fenner vehicle surrender program.
- Plaintiffs' attorney's fee and filing fee were paid by Fenner or Sperro.
- Plaintiffs' debt to Nissan was resolved as an unsecured claim in their bankruptcy case and fully discharged.

- Plaintiffs do not allege that they paid any amounts to Fenner or Sperro or that Fenner or Sperro requested to be paid.

Without any allegations to support an actual injury to Plaintiffs' business or property caused by UpRight, they cannot state a claim against UpRight based on an alleged violation of the RICO Act.

**G. Plaintiffs' Complaint Is An Impermissible "Shotgun Pleading."**

In *Weiland v. Palm Beach Cnty. Sheriff's Ofc.*, 792 F.3d 1313, (11th Cir. 2015), the Eleventh Circuit explained its intolerance for what it refers to as "shotgun pleadings" as follows:

> Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." The first published opinion to discuss shotgun pleadings in any meaningful way (albeit in a dissenting footnote) described the problem with shotgun pleadings under the federal rules. *See T.D.S. Inc. v. Shelby Mut. Ins. Co*., 760 F.2d 1520 (11th Cir. 1985). The footnote, which began by quoting Rules 8(a)(2) and 10(b), commented:
>
>> The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules.
>
> *Id.* at 1544 n. 14 (Tjoflat, J., dissenting). [Footnote omitted.] That footnote described the complaint at issue in *T.D.S*. as "a paradigmatic shotgun pleading, containing a variety of contract and tort claims interwoven in a haphazard fashion." Id.
>
> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. *The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.* [Footnote omitted.] The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. [Footnote omitted.] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. [Footnote omitted.] Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the

> defendants the claim is brought against. [Footnote omitted.] *The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.*

*Weiland*, 792 F.3d at 1320-1323 (emphases added); *accord Gulf Coast Mineral, LLC v. Ryall Omega, Inc.*, No. 14-cv-1264, 2016 WL 344960, at *5 (M.D. Ala. Jan. 27, 2016).

The first type of "shotgun pleading" identified by the Eleventh Circuit in *Weiland* apply in the instant case. Specifically, there are multiple paragraphs in the Complaint that either incorporate every prior allegation in the Complaint, including a prior paragraph that also incorporated every prior allegation, or incorporate blocks of paragraphs into a subsequent single paragraph.[86] These are quintessential examples of "shotgun pleading," which the Eleventh Circuit has made clear cannot be allowed to stand.

## IV. Conclusion

For the above reasons, UpRight respectfully asks this Court to enter an order dismissing Plaintiff's Complaint in its entirety with prejudice.

Date: May 27, 2020

Respectfully submitted,

*/s/ Mariellen Morrison*
Mariellen Morrison

Alabama State Bar No. 4396-167M
310 Paradise Lake Ln.
Hoover, AL 35244-5023
(t) (205) 837-2771
(e) marimorrison1@gmail.com

*Counsel for Deighan Law LLC,
doing business as UpRight Law*

[86] *See* Complaint at ¶¶ 77, 81, 82, 83, and 89.

**Certificate of Service**

I certify that on May 27, 2020, I filed the foregoing *Defendant's Motion to Dismiss Complaint for Failure to State a Claim on Which Relief Can Be Granted* through the Court's CM/ECF system, which will effectuate service upon all counsel of record.

In addition, on May 27, 2020, I emailed the foregoing *Defendant's Motion to Dismiss Complaint for Failure to State a Claim on Which Relief Can Be Granted* to counsel for the Plaintiffs as follows:

Harry P. Long
HLongLegal8@gmail.com

J. Bradley Ponder
Brad@MontgomeryPonder.com

*/s/ Mariellen Morrison*
Mariellen Morrison

Alabama State Bar No. 4396-167M
310 Paradise Lake Ln.
Hoover, AL 35244-5023
(t) (205) 837-2771
(e) marimorrison1@gmail.com

*Counsel for Deighan Law LLC,
doing business as UpRight Law*